**1422**

J. Benedict CENTIFANTI Appellant,

v.

NIX, Honorable Robert N.C., Jr., Individually and as a Justice of the Supreme Court of Pennsylvania, Larsen, Honorable Rolf, Individually and as a Justice of the Supreme Court of Pennsylvania, Flaherty, Honorable John P., Individually and as a Justice of the Supreme Court of Pennsylvania, McDermott, Honorable James T., Individually and as a Justice of the Supreme Court of Pennsylvania, Stout, Honorable Juanita Kidd, Individually and as a Justice of the Supreme Court of Pennsylvania, Zappala, Honorable Stephen A., Individually and as a Justice of the Supreme Court of Pennsylvania, Papadakos, Honorable Nicholas P., Individually and as a Justice of the Supreme Court of Pennsylvania.

No. 88–1522.

United States Court of Appeals,
Third Circuit.

Argued Dec. 1, 1988.
Decided Jan. 20, 1989.

See also, D.C., 661 F.Supp. 993.

Mark R. Rosen (argued), Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa. (Donald J. Goldberg, Philadelphia, Pa., of counsel), for appellant.

Howland W. Abramson (argued), Charles W. Johns, Administrative Office of the Pennsylvania Courts, Philadelphia, Pa., for appellees.

Before SEITZ, STAPLETON, and COWEN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

J. Benedict Centifanti appeals the order of the district court dismissing his complaint for lack of subject matter jurisdiction and denying his motion for leave to amend the complaint. Centifanti filed a complaint under 42 U.S.C. § 1983 (1982) against the Chief Justice and the Justices of the Supreme Court of Pennsylvania ("the Justices" or "Justice Nix"), following the Court's denial of his petition for reinstatement to the bar of the Supreme Court of Pennsylvania. The complaint alleged various constitutional defects in the procedural rules under which the Supreme Court considers petitions for the reinstatement of suspended·attorneys.

We hold that the complaint, properly framed, raises a permissible general constitutional challenge to state rules, and does not improperly seek review of a state court decision. Therefore, we will reverse the district court's dismissal of the complaint for lack of subject matter jurisdiction. We will also reverse the district court's denial of Centifanti's motion for leave to amend his complaint to eliminate improper factual detail contained in the complaint. We further hold that the district court did not abuse its discretion in denying Centifanti's motion to compel discovery and granting the Justices' motion for a protective order with regard to certain privileged documents. Finally, we conclude that Centifanti's suit is not barred by either the statute of limitations or the doctrine of res judicata.

## I.

### BACKGROUND

Before discussing the facts of this case, we briefly examine the relevant provisions of the Pennsylvania Rules of Disciplinary Enforcement ("R.D.E."), which govern the investigation and sanction of attorney misconduct. The Rules designate the Supreme Court of Pennsylvania as the ultimate decisionmaker on matters of attorney discipline.[1] The Rules provide for a Disciplinary Board and hearing committees which make findings and submit recommendations to the Supreme Court. R.D.E. 205 and 206.

The Disciplinary Board has "the power and the duty ... [t]o consider and investigate the conduct of any person subject to these rules...." R.D.E. 205(c)(1). More specifically, the Board has the authority to appoint three or more hearing committees within each disciplinary district, and to assign formal charges to a hearing committee. R.D.E. 205(c)(3) and (4). The Board is also authorized "[t]o review the conclusions of hearing committees with respect to formal charges and to prepare and forward its

---

**1.** R.D.E. 103 states that "[t]he Supreme Court declares that it has inherent and exclusive power to supervise the conduct of attorneys who are its officers (which power is reasserted in Section 10(c) of Article V of the Constitution of Pennsylvania) and in furtherof thereof promulgates these rules." Pa.R.D.E. 103 (West 1988).

own findings and recommendations, together with the record of the proceeding before the hearing committee, to the Supreme Court." R.D.E. 205(c)(5). Hearing committees, in turn, are authorized to conduct hearings into formal charges of misconduct upon assignment by the Board, to submit their conclusions (together with the record of the hearing) to the Board, and to review and approve or modify recommendations by Disciplinary Counsel for dismissals, informal admonitions, private reprimands and institution of formal charges. R.D.E. 206(b).

With regard to decisions on initial disciplinary actions, R.D.E. 208(e)(5) provides that the Supreme Court "shall review the record, where appropriate consider oral argument, and enter an order." R.D.E. 208(e)(4) states, however, that "[e]xcept as provided in [R.D.E. 208](e)(2) and (e)(3), respondent-attorney will not be afforded the right of oral argument." R.D.E. 208(e)(2) provides that if the Board recommends disbarment, the attorney may submit to the Supreme Court a request to present oral argument. R.D.E. 208(e)(3) provides that if the Board recommends a sanction less than disbarment, the Court may issue a rule to show cause why an order of disbarment should not be entered, if the Court so decides after considering the Board's recommendation. In the latter case, the attorney "shall have the absolute right upon request for oral argument." R.D.E. 208(e)(3).

R.D.E. 218(a) provides that "[n]o attorney suspended for a period exceeding three months ... may resume practice until reinstated by order of the Supreme Court after petition therefor pursuant to these rules." R.D.E. 218(b) provides that, with exceptions which are not germane here, "[a] person who has been disbarred may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment...." With regard to reinstatement petitions of disbarred or suspended attorneys, R.D.E. 218(c)(6) states: "The Supreme Court shall review the record [of the hearing committee and Disciplinary Board] and enter an appropriate order. Unless otherwise ordered, matters arising under this rule will be considered without oral argument."

Centifanti is an attorney admitted to the bar of the Supreme Court of Pennsylvania in 1972. In 1980, by order of the Supreme Court of Pennsylvania, Centifanti was retroactively suspended from the practice of law for five years, resulting from a plea of *nolo contendere* to two charges of aggravated assault on his wife in 1976.

On August 10, 1983, having successfully completed his criminal probation, Centifanti filed a petition for reinstatement with the Disciplinary Board of the Supreme Court of Pennsylvania. Following the completion of hearings, a hearing committee of the Disciplinary Board submitted a report to the Board unanimously recommending that Centifanti's petition for reinstatement be granted.

Upon review, the Disciplinary Board remanded the petition to the hearing committee to consider certain factual questions which it believed were presented by the record and to consider independent medical testimony concerning Centifanti's mental health. The hearing committee reviewed additional evidence and again unanimously recommended reinstatement. On review of the record, the Disciplinary Board issued an opinion recommending Centifanti's reinstatement by a vote of eight to one.

Centifanti filed an application for leave to file a brief in support of his petition for reinstatement with the Supreme Court of Pennsylvania. By letter dated July 9, 1986, the Court, with one Justice dissenting, denied the petition for reinstatement to the Bar as well as the application for leave to file a brief. The decision was unaccompanied by an opinion or statement of reasons.

On January 2, 1987, Centifanti filed a complaint in the district court alleging a cause of action under 42 U.S.C. § 1983 against the Chief Justice and the Justices of the Supreme Court of Pennsylvania. The complaint alleges that the court-promulgated procedural rules governing attorney reinstatement violate the due process and equal protection clauses of the fourteenth amendment to the United States

Constitution.[2] Although we do not decide the merits of Centifanti's constitutional claims in this opinion, an understanding of these claims is necessary to resolve the jurisdictional issue in this case. The complaint, fairly read, essentially alleges the following due process defects in the rules:

1) that the rules fail to provide for a hearing before the Justices prior to action on a petition for reinstatement, following favorable action on the petition by the hearing committee and the Disciplinary Board;

2) that the rules fail to allow petitioners to submit briefs to the Justices in support of the recommendation of the Disciplinary Board that petitioners be reinstated, or to address any concerns or comments expressed by the Board;

3) that the rules fail to provide notification to petitioners, following favorable action by the Board, that the Justices may believe that reinstatement may not be in order, and fail to allow petitioners a hearing before the Justices and to submit a brief addressing any concerns the Justices may have; and

4) that the rules fail to require issuance of a statement of reasons when the Justices reject a petition for reinstatement which had been favorably acted upon by the Board.

*See* App. at 16–18.

Centifanti's complaint also alleges that the rules violate the constitutional guarantee of equal protection. The complaint notes that the rules provide that attorneys suspended for more than three months may not resume practice without first formally petitioning for reinstatement and obtaining the approval of a hearing committee, the Disciplinary Board and the Justices. Yet, although such attorneys are subject to *"de facto* disbarment," they are not afforded the same procedural safeguards as attorneys who are formally disbarred. App. at 20–21.

In a memorandum opinion and order dated June 1, 1988, the district court dismissed Centifanti's complaint for lack of subject matter jurisdiction, and also denied his application for leave to amend the complaint. App. at 244. The court considered Centifanti's complaint to be identical in effect to the complaint filed in *Stern v. Nix,* 840 F.2d 208 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988), in which this Court held that the district court lacked subject matter jurisdiction over the complaint. The district court viewed Centifanti's complaint as an attempt to obtain improper review of the decision of the highest court of a state, rather than a permissible generalized constitutional challenge to a state law. The district court also determined that his "proposal to amend the complaint by deleting much of the personal detail does not alter the fundamental nature of this action which is, as it has always been, to challenge the Pennsylvania Supreme Court's judgment." App. at 245 (footnote omitted). Centifanti appeals to this Court.

## II.

### THE APPLICABLE LAW

Congress has provided that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court...." 28 U.S.C. § 1257 (1982). In *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), the Supreme Court held that section 1257 provides that *only* the Supreme Court, and not lower federal courts, may review decisions of the highest court of a state. *See also Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).

In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206 (1983), the Court reaffirmed its holding in *Rooker,* stating that a district court has "no authority to review final judgments of a state

---

**2.** The third count of Centifanti's complaint also contains a claim based on the privileges and immunities clause of the fourteenth amendment. The complaint is reproduced at Page 4 of the Joint Appendix.

court in judicial proceedings" and "[r]eview of such judgments may be had only in this Court." [3] The Court in *Feldman* also added an important qualification to this rule, however, in the following discussion:

We have recognized that state supreme courts may act in a nonjudicial capacity in promulgating rules regulating the bar. Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States district court to review a final state-court judgment in a judicial proceeding. Instead, the district court may simply be asked to assess the validity of a rule promulgated in a nonjudicial proceeding. If this is the case, the district court is not reviewing a state court judicial decision. In this regard, 28 U.S.C. § 1257 does not act as a bar to the district court's consideration of the case and because the proceedings giving rise to the rule are nonjudicial the policies prohibiting United States district court review of final state-court judgments are not implicated. *United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a*

*final state-court judgment in a particular case.*

*Id.* at 486, 103 S.Ct. at 1317 (emphasis added) (citations omitted).

The Court in *Feldman* then applied the above principle to the facts of the case. Two attorneys had unsuccessfully sought waivers from the District of Columbia Bar admission rule requiring applicants to have graduated from a law school accredited by the American Bar Association. The attorneys then filed section 1983 actions in federal district court. The complaints contained a number of constitutional claims, some involving general challenges to the procedural rules as promulgated, and others involving challenges to the specific decisions of the state supreme court not to waive certain bar application requirements in their cases. [4]

The *Feldman* Court held that the district court lacked subject matter jurisdiction over those claims which alleged that the denial by the state court of the attorneys' petitions for waiver was arbitrary and capricious, but that it *did* have subject matter jurisdiction over those claims which raised general challenges to the constitutionality of the rules. *Id.* at 487, 103 S.Ct. at 1317. [5]

---

3. After an extensive analysis, the *Feldman* Court found the state court proceedings to be "judicial," rather than legislative, ministerial or administrative, and thus subject to the proscription against appeal in the lower federal courts. 460 U.S. at 476–482, 103 S.Ct. at 1311–1315. The Court stated that " '[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.... Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.' " *Id.* at 477, 103 S.Ct. at 1312 (quoting *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)).

Another court has aptly noted: "Following the decision in *Feldman,* courts have consistently found state court decisions regarding the application of bar rules to be judicial rather than ministerial, even when the decisions are made not by the state's supreme court, but by a committee appointed by that court. The determination in these cases turns on whether the state court or its designee considers a present claim of right by applying the terms of a rule to the facts of a petitioner's case." *Randolph v.*

*Lipscher,* 641 F.Supp. 767, 774 (D.N.J.1986) (citations omitted).

The parties in the instant case do not appear to dispute that when the Pennsylvania Supreme Court decided Centifanti's petition, it was applying existing rules to the facts to reach a decision and was thus acting in a judicial capacity.

4. In *Feldman,* the "state supreme court" was actually the District of Columbia Court of Appeals. Title 28 U.S.C. § 1257 provides that "[f]or the purposes of this section, the term 'highest court of a state' includes the District of Columbia Court of Appeals."

5. In finding jurisdiction, the Court noted:
The respondents' claims that the rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the District of Columbia Court of Appeals' power to regulate the bar to the American Bar Association, do not require review of a judicial decision in a particular case. The District Court, therefore, has subject-matter jurisdiction over these elements of the respondents' complaints.

The Court in *Feldman* recognized the occasional difficulty in distinguishing between a general challenge to court-promulgated attorney disciplinary or admission rules, and a specific challenge to a particular decision involving these rules by a state supreme court. The Court suggested that "[i]f the constitutional claims presented to a United States district court are *inextricably intertwined* with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state-court decision ... [which] the district court may not do." *Id.* at 482 n. 16, 103 S.Ct. at 1315 n. 16 (emphasis added).

We recently had occasion to apply the so-called *Rooker–Feldman* doctrine in *Stern v. Nix,* 840 F.2d 208 (3d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988).[6] Stern, a Pennsylvania attorney, was the subject of a disciplinary investigation by state bar authorities. A hearing committee of the Disciplinary Board recommended a private reprimand as a sanction against Stern for his misbehavior. The Disciplinary Board on review recommended the higher sanction of public censure. The Supreme Court rejected the factual findings of both the committee and the Board, which the disciplinary rules allowed it to do, and imposed the penalty of disbarment. 840 F.2d at 210.

Stern then filed a section 1983 action in federal district court against the Justices of the Supreme Court, challenging the combined effect of two state court rules. The first rule was a court-made rule which provides that the Pennsylvania Supreme Court may review *de novo* attorney disciplinary hearings without being bound by the findings of the hearing committee or the Disciplinary Board. The second rule was a Pennsylvania Rule of Disciplinary Enforce-

ment which provided that attorneys facing disciplinary charges had the right to oral argument before the Supreme Court, but made no provision for an evidentiary hearing before the Court. Stern challenged the Supreme Court's practice of rejecting administrative findings of fact without conducting an evidentiary hearing. *Id.* at 212.

The district court denied the Justices' motion to dismiss the action on the basis of lack of subject matter jurisdiction, but also denied the injunction requested by Stern. On appeal, we held that the district court lacked subject matter jurisdiction over Stern's complaint, because the complaint sought reversal of the decision of the Supreme Court of Pennsylvania, in contravention of *Rooker–Feldman.* *Id.* at 212–13.

We based our decision in *Stern* on our determination that the remedy sought would, if granted, force the district court to review the merits of the state court's decision, for two reasons. First, Stern sought a permanent injunction preventing the state court from disbarring him and others without a hearing. We noted that this remedy, if granted, would effectively reverse the state court judgment, and thus improperly review that judgment. *Id.* at 212.

Second, Stern also requested a temporary restraining order and a preliminary injunction. We noted that both of these remedies "required him to demonstrate the likelihood of success on the merits and irreparable harm to *himself,* thus shifting the focus to the actions of the Supreme Court of Pennsylvania in his particular case." *Id.* (emphasis in original). Thus we concluded that Stern's complaint, although couched in terms of a general challenge to the constitutionality of the state rules, was in reality an attempt to obtain reversal of the state court judgment which disbarred him.[7]

---

460 U.S. at 487, 103 S.Ct. at 1317.

**6.** The *Stern* decision was decided by a panel of Second Circuit judges sitting as a panel of the Court of Appeals for the Third Circuit, by designation of the Chief Justice of the United States. All the judges of this Court had recused themselves on the appeal. 840 F.2d at 209 n. *.

**7.** Our decision in *Stern* was also influenced by the excessive factual detail in Stern's complaint. We noted that "[t]he complaint and the stipulation of facts contained extensive exposition of the specific facts in Stern's case, which hardly would have been necessary if the district court were being asked only to 'assess the validity' of the rule in its general application." 840 F.2d at

## III.

### DISCUSSION

#### A. *Subject Matter Jurisdiction*

We must determine on which side of the *Rooker–Feldman* line Centifanti's complaint falls. The district court's dismissal of the complaint for lack of subject matter jurisdiction raises a question of law subject to plenary review by this Court. *Medical Fund–Philadelphia Geriatric Center v. Heckler,* 804 F.2d 33, 36 (3d Cir.1986).

Our first task is to characterize the precise object of Centifanti's constitutional challenge. In *Feldman,* the appellants challenged the decisions of a state court not to waive bar application requirements in their cases, but they also made a general challenge to the constitutionality of those requirements. The Supreme Court emphasized the fundamental difference between the two types of challenges. Here Centifanti challenges the constitutionality of the Pennsylvania rules as they exist, rather than the state court's application of them to deny his petition. As in *Feldman,* Centifanti's claims reflect "general challenges to state bar rules, promulgated by [a] state court[ ] in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case." 460 U.S. at 486, 103 S.Ct. at 1317. Thus, Centifanti's complaint is in the nature of those *Feldman*-type claims (general challenges to the constitutionality of state supreme court rules) over which the district court has jurisdiction, and does not run afoul of the prohibition against appeals of state court decisions to lower federal courts.

As in *Stern,* examining the nature of the specific relief requested will aid us in determining what is being challenged and, thus, whether the district court has subject matter jurisdiction. *See Stern,* 840 F.2d at 212. In his due process claim, Centifanti requests a declaratory judgment that "the rules and procedures for considering petitions for reinstatement of suspended attorneys are unconstitutional." App. at 18. This would not require the district court to review the state supreme court decision. The declaratory judgment Centifanti seeks is prospective and directed toward "the rules and procedures for considering [future] petitions for reinstatement," rather than toward the decision of the state supreme court on Centifanti's prior petition. In *Stern,* we noted that Stern requested a declaratory judgment as well as injunctive relief, 840 F.2d at 212, and we expressed no jurisdictional difficulty with the former.[8]

Centifanti also sought "injunctive relief directing the Defendant Justices to afford plaintiff and all similarly situated future petitioners for reinstatement Due Process prior to denial of their petitions," including the right to a hearing before the Justices, and the right to submit briefs to them and to receive a statement of reasons from them. App. at 19–20. Centifanti's request for a permanent injunction differs significantly from the injunction sought in *Stern.* Stern sought an injunction restraining the state supreme court from disbarring him and similarly situated attorneys unless the court, in cases where it plans to reject the findings of the hearing committee ("which of course would include Stern's case," we noted), first grants an evidentiary hearing. 840 F.2d at 212. We considered this an improper attempt to en-

---

212–13 (quoting *Feldman,* 460 U.S. at 486, 103 S.Ct. at 1316).

**8.** In fact, we strongly implied in *Stern* that a challenge seeking declaratory relief did *not* violate the *Rooker–Feldman* doctrine. Stern had argued that his case was similar to a case from another circuit in which the court of appeals held that the district court had jurisdiction over a challenge to a state's procedural rule governing attorney discipline. We rejected Stern's comparison, noting that "[i]n *Razatos* [*v. Colorado Supreme Court,* 746 F.2d 1429, 1430 (10th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct.

2019, 85 L.Ed.2d 301 (1985) ], the plaintiff requested *only declaratory relief* and a hearing, *not an injunction.*" 840 F.2d at 212 n. 2 (emphasis added).

Of course, the substance and not the form of the requested relief is ultimately controlling. For example, a federal court would not have jurisdiction over a complaint seeking a "declaration" that a state court's decision not to waive a bar application requirement was arbitrary and capricious. This certainly would raise a retrospective challenge to a state court decision.

join, albeit conditionally, the enforcement of the state supreme court judgment disbarring Stern. *Id.*

In contrast to the injunction sought in *Stern,* Centifanti seeks to enjoin the Justices to direct that they "afford *plaintiff and all similarly situated future petitioners for reinstatement* Due Process prior to the denial of their petitions." App. at 19–20 (emphasis added). Centifanti argues, and we agree, that the complaint's joint reference to Centifanti "and all similarly situated future petitioners" indicates that he seeks *prospective* relief. He does not request the district court to interfere in any way with the decision of the Pennsylvania Supreme Court to deny his petition, or with the enforcement of that decision. Instead, he requests an injunction ordering the state court to correct alleged constitutional defects in the procedural rules applied in reaching that decision. Although such relief, if granted, could affect *future* decisions of the state supreme court, it would not require review of a past decision. Thus, we hold that the district court has subject matter jurisdiction over the due process claim.

Centifanti's requests for injunctive relief in his equal protection claim, App. at 19–22, and his privileges and immunities claim, App. at 22–25, are framed in terms identical to his due process claim. That is, they seek prospective relief in the form of ordering the Justices to remedy the alleged defects for the purposes of future reinstatement proceedings. Thus, the analysis we have set forth above of his due process claim applies as well to these additional constitutional challenges.

■ We must also determine whether Centifanti's claims are "inextricably intertwined" with the merits of the state court's denial of Centifanti's petition. *See Feldman,* 460 U.S. at 482–84 n. 16, 103 S.Ct. at 1314–16 n. 16. In his concurring opinion in *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987), Justice Marshall addressed the problem of determining when a constitutional claim is "inextricably intertwined" with the particular decision of a state court:

While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.* In the instant case, the district court could hold that the state rules in question violate the Constitution, without holding that the Pennsylvania Supreme Court erred in denying Centifanti's petition for reinstatement. Thus, the federal claim is not inextricably intertwined with the state court judgment.

## B. *Amendment of the Complaint*

In order for the district court to have subject matter jurisdiction over Centifanti's complaint, the complaint must challenge the *rules* promulgated by the court, rather than the court's *decision* on Centifanti's petition for reinstatement. Thus, Centifanti's complaint need only contain enough factual detail to enable him to establish standing to bring an action pursuant to 42 U.S.C. § 1983 challenging the state supreme court rules.

Centifanti includes in his complaint far more detail than is necessary to mount a general constitutional challenge to the Pennsylvania rules. He describes his productivity since his suspension from the practice of law, his rehabilitation from an alcohol problem, his completion of probation, and his numerous character references. He also describes the hearing committee's and Disciplinary Board's strong recommendations for reinstatement. However, the facts alleged are simply outside the scope of and irrelevant to a federal district court's review of state court-promulgated rules. The excessive detail under-

mines the validity of Centifanti's general constitutional challenge, and his complaint begins to resemble an attempt to seek improper review of the state supreme court decision.

In his supplemental response to defendant's motion for summary judgment, Centifanti moved, in the alternative, for leave to amend his complaint to eliminate the improper factual detail from the complaint. App. at 236. The district court denied the motion, stating that "plaintiff's proposal to amend the complaint by deleting much of the personal detail does not alter the fundamental nature of this action which is, as it has always been, to challenge the Pennsylvania Supreme Court's judgment." App. at 245 (footnote omitted).

■ Rather than simply filing an amended complaint, as the Federal Rules of Civil Procedure authorized him to do as a matter of course,[9] Centifanti filed a motion for leave to amend his complaint. App. at 236. Accordingly, we will treat this as a case in which leave of court is required to amend.[10] Fed.R.Civ.P. 15(a) provides in relevant part that in cases other than where a party may amend as a matter of course, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." We have held that although amendments are to be liberally granted, the district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).

■ The district court determined that it lacked subject matter jurisdiction over Centifanti's complaint under the *Rooker–Feldman* doctrine. Based on this conclusion, it denied the motion to amend the complaint, asserting simply that an amendment would not cure the jurisdictional defect, app. at 245, and thus by implication, that the amendment would not survive a motion to dismiss. Because we hold that the district court has subject matter jurisdiction over the complaint, we determine that the amendment would survive a motion to dismiss for lack of subject matter jurisdiction. The district court abused its discretion in denying the motion for leave to amend the complaint, and we will reverse the district court's order.[11]

9. Fed.R.Civ.P. 15(a) provides in part that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

Nix filed motions to dismiss under Fed.R.Civ.P. 12(b)(6) and, in the alternative, for summary judgment under Fed.R.Civ.P. 56. However, neither a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under Federal Rule of Civil Procedure 15(a). *See Reuber v. United States*, 750 F.2d 1039, 1062 n. 35 (D.C.Cir.1984); *McDonald v. Hall*, 579 F.2d 120, 121 (1st Cir.1978).

Thus, because a responsive pleading had not yet been served, Centifanti was entitled "as a matter of course" to amend his complaint. He was not required to seek leave of court to do so.

10. We note that Centifanti included a list of recommended deletions along with his motion to amend the complaint. We believe that the better practice to be followed in filing a motion to amend a complaint is to attach with the motion a copy of a proposed amended complaint. First, on general principles, courts

should not be expected to wade through the pleadings to sort the wheat from the chaff and, essentially, do the work of the parties' counsel. Second, and more important, including a proposed amended complaint, rather than a list of recommended deletions, reduces the potential for confusion in having the court mark and proofread a party's changes. Third, the court may rule on the motion more effectively and quickly if it has before it a copy of the proposed amendment.

11. We recognize that in *Stern* the excessive factual detail in the complaint was a factor in our characterizing that complaint as an attempt at improper review of the state court decision. *See* 840 F.2d at 212–13. In that case, however, we did not have occasion to address the issue of amending the defective complaint, as Stern apparently did not file an amended complaint or move for leave to do so. Moreover, our decision in *Stern* was based primarily on the retrospective nature of the specific injunction sought, as discussed above. Thus, *Stern* does not prevent us from reversing the district court on its denial of the motion to amend.

## C. *The District Court's Denial of the Motion to Compel Discovery*

In interrogatories submitted to the Justices, Centifanti requested identification of any documents and communications concerning the decision to provide for the right of oral argument and briefing before the Pennsylvania Supreme Court in reinstatement proceedings under Rule 17–18 (the rule which was amended to eliminate oral argument and briefing). Interrogatory 15, app. at 47–49. He also sought identification of documents and communications concerning the decision to amend Rule 17–18 and to adopt Pa.R.D.E. 218, which eliminated the right to oral argument and briefing before the Court. Interrogatory 16, app. at 49–51.

Eventually three particular documents were identified, but the Justices claimed that they were privileged from discovery. These documents include a letter from the Chairman of the Disciplinary Board, on Behalf of the Disciplinary Board, to the Chief Justice of the Pennsylvania Supreme Court, and two letters from the Chief Disciplinary Counsel to the Disciplinary Board. Pursuant to Centifanti's motion to compel responses to discovery and the Justices' cross-motion for a protective order, and various supporting papers submitted by the parties, the district court inspected the three documents *in camera*. In an order entered January 5, 1988, the court held that these documents are protected by the attorney-client privilege and the predecisional governmental privilege. App. at 231–32. Centifanti appeals the court's order.

The district court unfortunately failed to include the disputed documents in the record when the court issued its order. The proper procedure called for the district court to include in its order denying the motion to compel discovery an order that the letters be filed under seal as part of the district court record. This Court would then be in a position to view the documents and review whether the district court abused its discretion in holding that the documents were privileged. However, on October 31, 1988 Centifanti moved to transmit the letters under seal to the Clerk of the Court of Appeals, and on November 4, 1988 this Court issued an order granting that motion. Thus the letters are now before us on review.

We have examined the three documents, and we find that the district court did not abuse its discretion in holding that the documents are privileged from discovery. The letters from the Chief Disciplinary Counsel to the Disciplinary Board reflect confidential communications made within the attorney-client relationship, and thus they are protected by the attorney-client privilege. The letter from the Chairman of the Disciplinary Board to the Chief Justice of the Supreme Court contains recommendations and deliberations regarding the development of rules and policy governing regulation of attorneys. Because it reflects the deliberative process of government policymakers, it is protected by the predecisional governmental privilege.

## D. *Statute of Limitations and Res Judicata*

The district court, having decided that it lacked jurisdiction over the instant matter and having denied leave to amend the complaint, expressly did not reach the Justices' claims that the proposed amended complaint would be barred by Pennsylvania's two year statute of limitations for tort actions and by principles of issue and claim preclusion. App. at 245 n. 3. We address these two questions now.

With regard to the statute of limitations, the Justices argue that Centifanti's cause of action accrued in 1983, when Centifanti filed his petition for reinstatement. They note that Centifanti's section 1983 action was brought in 1987, beyond the two-year statute of limitations for tort actions—and thus for section 1983 actions—in Pennsylvania. The Justices argue that because Centifanti is alleging a general infirmity in the state supreme court rules rather than a defect in the decision on his petition, Centifanti did not have to wait until his petition was denied to bring suit.

We find the Justices' arguments unpersuasive. First, we observe that Centifanti

remains suspended from the practice of law, and thus he alleges what is in essence a continuing wrong. His cause of action continues to accrue on each day of the alleged wrong. Second, even if we did not determine that the cause of action continued to accrue each day, we would nevertheless find the complaint not barred by the statute of limitations. Although we agree with the Justices that Centifanti is alleging a defect in the rules and not in the state court's decision, this does not mean that the cause of action accrued as soon as he filed his reinstatement petition. Centifanti did not have standing to challenge the rules until he had suffered or was about to suffer an actual injury. This did not occur until the Pennsylvania Supreme Court denied his petition in July of 1986, or at least until the hearing committee and the Disciplinary Board recommended his reinstatement. He filed his complaint in the federal district court in January of 1987, well within two years of both the Court's denial and the Board's recommendation.

The Justices also argue that Centifanti could have raised his constitutional claims in the reinstatement proceeding in the state supreme court, or before the hearing committee or Disciplinary Board, and that his failure to do so bars the district court from hearing those claims under the doctrine of res judicata. In *Feldman*, the Supreme Court expressly declined to reach the issue of res judicata. 460 U.S. at 487–88, 103 S.Ct. at 1317–18.[12] The Justices cite several cases in their brief which hold that res judicata may apply to an attorney's constitutional challenges to procedural rules where the claims could have been but were not litigated in the state-court attorney disciplinary proceedings. *See, e.g., Coogan v. Cincinnati Bar Ass'n*, 431 F.2d 1209, 1211 (6th Cir.1970).

Centifanti does not dispute that res judicata *may* apply in such cases, but he argues that he did not have a realistic opportunity to raise his federal constitutional

claims in the state court proceeding. Appellant's Brief at 29. We agree that on the record before us and in the factual context of his particular application for reinstatement, Centifanti did not have a realistic opportunity to fully and fairly litigate these issues. Thus, we determine that he is not barred by res judicata from bringing his constitutional claims in the district court.

## IV.

### CONCLUSION

For the reasons discussed, we will reverse the district court's order dismissing the complaint for lack of subject matter jurisdiction. We will also reverse the court's order denying Centifanti leave to amend his complaint to delete the improper factual detail. We affirm the district court's order denying the motion to compel discovery of the privileged documents. Finally, we determine that neither the statute of limitations nor res judicata preclude this action.

Costs taxed against appellees.

---

12. The Court noted, however, that "[i]t is possible that review of a state-court decision by this Court could be barred by a petitioner's failure to raise his constitutional claims in the state courts." 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16. The Court explained that "the fact that

we may not have jurisdiction to review a final state-court judgment because of a petitioner's failure to raise his constitutional claims in state court does not mean that a United States district court should have jurisdiction over the claims." *Id.*