Stephen S. ADAMS, et al., Plaintiffs,

v.

Charles A. BOWSHER, Comptroller General of the United States, et al., Defendants.

Civil Action No. 95–2015.

United States District Court, District of Columbia.

Oct. 10, 1996.

Jules Bernstein, Linda Lipsett;  and Edgar James, Michael Lewis, James & Hoffman, Washington, D.C., for Plaintiffs.

Susan K. Rudy, Kathryn D. Ray, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, D.C., for Defendants.

### MEMORANDUM

JUNE L. GREEN, District Judge.

Before the Court are Plaintiffs' Motion for Summary Judgment and Defendants' Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment. For the reasons stated hereafter, Plaintiffs' motion is denied and Defendants' motion for Summary Judgment is granted.

### I. BACKGROUND

Plaintiffs are current or former employees of the United States, employed by one of several agencies as criminal investigators or in some other law enforcement capacity. Those agencies include the Bureau of Alcohol, Tobacco and Firearms ("BATF"), Drug Enforcement Administration ("DEA"), Internal Revenue Service ("IRS"), Customs Service ("Customs"), and the U.S. Secret Service ("Secret Service").

In February of 1990, Plaintiffs brought actions in the United States Court of Federal Claims ("CFC"), alleging, *inter alia*, that they improperly had been considered exempt from the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and were entitled to compensation for unpaid overtime wages.[1] (Compl. ¶ 16). Identical claims were filed simultaneously with the General Accounting Office (GAO). (Compl. ¶ 20). In a decision dated October 30, 1992, the CFC concluded that some of the Plaintiffs employed by those agencies were exempt from the FLSA's overtime compensation provisions, while others were not exempt. *Adams v. United States*, 27 Fed.Cl. 5 (1992). Thereafter, in March 1994, the United States reached "partial" settlement agreements with those plaintiffs the CFC had determined to

have been non-exempt from the FLSA. *See* Bernstein Decl., Exhibits 8–10.

In the wake of the CFC decision, as well as the ensuing settlements, Plaintiffs in this case, on April 12, 1994, attempted to have their previously filed administrative claims resolved by GAO. Def.Mot.Sum.J., Ex. 4. On May 23, 1994, GAO issued a ruling in a case similar to Plaintiffs', concluding that the two or three-year statute of limitations period contained in the Portal-to-Portal Act, 29 U.S.C. § 255(a), rather than the six-year limitations period contained in the Barring Act, 31 U.S.C. § 3702(b)(1), was applicable to all pending and future FLSA administrative claims, and, therefore, the claim was time barred. *Matter of: Joseph M. Ford,* 1994 WL 201742 (C.G.) (May 23, 1994). This decision reversed the GAO's previous longstanding interpretation that a six-year limitation period applied for filing FLSA claims.[2]

On September 30, 1994, a six-year statute of limitations for FLSA claims filed with GAO was enacted by Congress with the passage of the 1995 Treasury, Postal Service and General Government Appropriations Act, P.L. 103–329, § 640, 108 Stat. 2432 (1994). ("1995 Act.") Section 640 of the 1995 Act ("original Section 640") directed that a six-year statute of limitations be applied for all claims filed prior to June 30, 1994, thereby reversing the GAO's decision in *Ford. Id.* Notwithstanding, Plaintiffs' claims before GAO were not resolved. Instead, Plaintiffs were told that their claims must first be filed with the Plaintiffs' employing agencies. Def. Mot.Sum.J., Ex. 7.

As directed, Plaintiffs filed their claims in the form of letters to the employing agencies outlining their claims.[3] Def.Mot.Sum.J., Exs. 13, 14.

Between February 15 and May 9, 1995, the agencies denied Plaintiffs' claims on the basis that Section 640 of the 1995 Act authorized

---

1. Those cases have been consolidated in the CFC under the caption *Adams v. United States*, No. 90–162C.

2. In fact, GAO had been applying the six-year limitations period found in the Barring Act as early as 1978 and at least twice thereafter. *See Transportation Systems Center,* 57 Comp.Gen.

441 (1978); *Federal Firefighters,* 68 Comp.Gen. 681 (1989).

3. Although only those Plaintiffs who had filed before June 30, 1994, were affected by the 1995 Act, the excluded Plaintiffs continued to argue that they should be extended a six year limitation period, as well. Def.Mot.Sum.J., Ex. 9 at 2.

only the Comptroller to apply a six-year statute of limitations. Def.Mot.Sum.J., Ex. 15. Plaintiffs appealed these decisions to the GAO. Def.Mot.Sum.J., Ex. 16. The GAO, however, did not act on the appeals immediately, but instead sought comments from the employing agencies. Def.Mot.Sum.J., Ex. 17.

On November 19, 1995, Congress amended Section 640 of the 1995 Act, reaffirming the six-year limitation period for FLSA claims filed prior to June 30, 1994, but making the section inapplicable to employees who had previously "received any compensation for overtime hours worked during the period covered by the claim under any other provision of law ..." and for time spent driving between home and duty station. Treasury, Postal Service, and General Government Appropriations Act of 1996, Pub.L. 104–52, 109 Stat. 468–69 (1995). ("amended Section 640"). GAO has since applied this statute to deny claims for compensation where an employee was paid for administratively uncontrollable overtime ("AUO") and for time spent driving between the claimant's home and office. *Matter of: Marvin B. Atkinson*, 1996 WL 31212 (C.G.) (January 29, 1996).

## II. *DISCUSSION*

This case presents complex issues of law because it not only requires interpretation of various competing statutes, but raises constitutional questions, as well.

Plaintiffs argue that Section 640 of the 1995 Act, as well as the subsequent amendment to that section, violate due process because they operate retroactively to divest Plaintiffs of already earned overtime pay. The Government asserts that no property rights are implicated and, even if there were, the government acted properly because its purpose in passing the statute was both reasonable and rational.

The analytical framework for this case begins with whether Plaintiffs had a vested property interest at stake, *see Association of Accredited Cosmetology Schools v. Alexander*, 979 F.2d 859, 864 (D.C.Cir.1992), and, if so, whether the retroactive effect of such economic legislation had a "legitimate legislative purpose furthered by rational means." *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d

328 (1992) (*quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984)). An examination of the relevant statutes serves as a starting point.

### A. *Statute of Limitations Under Fair Labor Standards Act (FLSA)*

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, which allows claims for unpaid overtime compensation to employees, was made applicable to federal workers by amendment in 1974. 29 U.S.C. § 207(a) (1974). The Statute of Limitations for FLSA claims is found in the Portal-to-Portal Act and allows for a two-year limitations period in cases where the violation of the FLSA is nonwillful and three years where the violation is willful. 29 U.S.C. § 255(a) (1947). Notwithstanding the provisions of the Portal-to-Portal Act, the GAO, pursuant to its authority to settle administrative claims under the Barring Act, 31 U.S.C. § 3702, traditionally has applied the six-year statute found in that section, to administrative FLSA claims. *See Transportation Systems Center*, 57 Comp.Gen. 441 (1978); *Federal Firefighters*, 68 Comp.Gen. 681 (1989).

As stated previously, this policy changed with GAO's decision in *Ford* when the GAO determined that the two or three-year statute of limitations contained in the Portal-to-Portal Act (which is expressly applicable to the FLSA) trumped the six-year period found in the Barring Act. *Ford* at 4. In so concluding, the GAO relied on the language of the Barring Act, which establishes a six-year limit on filing claims with GAO "except ... as provided by ... another law." 31 U.S.C. § 3702(b)(1)(A). The GAO determined "another law" to be the Portal-to-Portal Act and denied the claims on that basis. *Ford* at 4.

Congress, however, extended the two or three-year limitation period to six years by passing Section 640 of the 1995 Act. Although this section effectively reversed the *Ford* decision, it did so only for those Plaintiffs who filed their claims prior to June 30, 1994. Moreover, the amendment to Section 640, enacted a year later, placed further limitations on even these individuals by making

the six-year limitation period applicable only to those who had not received overtime compensation under other specified statutes and circumstances or, whose claims involved commuting time. 1996 Act, § 640.

As matters now stand, the Plaintiffs can be divided into two distinct groups for purposes of this analysis: 1) those who filed their claims after the June 30, 1994, date, and, therefore, fall under the 2–3 year limitation period GAO applies to FLSA claims, and 2) those who filed their claims prior to June 30, 1994, but received overtime compensation under other provisions of law or claim overtime for time spent commuting, and are, therefore, excluded from coverage under amended Section 640.

In either instance, the Court, as an initial matter, must decide whether there is a property interest at stake.

### B. *Property Interest*

■ The two alleged property interests advanced here are: 1) "pending and accrued administrative backpay claims" and 2) "earned but unpaid FLSA overtime compensation." Pls'.Mot.Sum.J. at 1, 44. Courts have held that a cause of action, while a "species of property" protected by due process, nonetheless is "inchoate, and affords no definite or enforceable property right until reduced to a final judgment." *Austin v. City of Bisbee, Arizona,* 855 F.2d 1429, 1435 (9th Cir.1988), *citing In re Consolidated U.S. Atmospheric Testing Litigation,* 820 F.2d 982 (9th Cir.1987). In the *Austin* case, the Plaintiff was a police officer who had filed his FLSA claim in court. Before the court ruled, however, Congress passed retroactive legislation that effectively extinguished the plaintiff's claim. The appellate court concluded that the Plaintiff had failed to perfect his rights prior to the change in the law, and, therefore, had no property interest in the cause of action. *Id.* at 1435. Here, of course, there is no final judgment involving the Plaintiffs' claims and so, the Court reaches a similar conclusion.

■ With regard to Plaintiffs' alleged property interest in their "earned but unpaid FLSA overtime compensation," the Court views this as a much closer question. "Prop-

erty rights to public benefits are defined by the statutes or customs that create the benefits." *Jones v. Reagan,* 748 F.2d 1331, 1338 (9th Cir.1984) *citing Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The court in *Austin* dealt with this issue contritely by relying on the decision in *Jones* which stated: "When ... the statute authorizing the benefits is amended or repealed, the property right disappears." *Id.* Although the outcome essentially is correct, the Court is not inclined to agree with the reasoning in *Jones.*

Prior to FLSA being made applicable to federal workers, there was no expectation of overtime compensation under FLSA and, therefore, no due process property interest. Once added to the FLSA, however, federal workers could thereafter expect to receive overtime compensation treatment under FLSA. While this arguably created a property interest, such a conclusion, without looking further, misses the point that the FLSA is a creature of statute and can only confer benefits contained within the statute. The expectation to overtime compensation, therefore, is governed by the provisions of the FLSA and any other applicable statutory provisions. The question then becomes, exactly what rights did the FLSA and relevant statutes confer on the Plaintiffs, *e.g.,* what is the applicable statute of limitations period for the Plaintiffs?

It is at this juncture of the analysis that the posture of the two groups of Plaintiffs becomes important. For the Plaintiffs who filed their claims after June 30, 1994, or are otherwise excluded under amended Section 640, the question is whether they should have been given the two or three-year limitation period under the Portal-to-Portal Act, or the six-year period under the Barring Act.

Plaintiffs claim that the Barring Act refers to administrative claims while the Portal-to-Portal Act refers only to "causes of action" filed in court. The Court finds no support for such a position. The Court agrees with the reasoning in *Hickman v. United States,* 10 Cl.Ct. 550, 552 (1986), in which the CFC concluded that Congress acted deliberately in setting the limitation period at two or three years and that there was nothing in the

legislative record indicating congressional intent to impart a more liberal limitations period to federal employees· than to employees in the private sector. Accordingly, this Court cannot construct a statutory interpretation contrary to congressional intent. *Chevron· U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The Court is aware that for many years the GAO applied a six-year statute of limitations to FLSA claims filed administratively. The simple fact is that GAO was wrong to do so. Until the passage of Section 640 in the 1995 Act, GAO had no authority to permit a 6 year limitation period for FLSA claims. Moreover, GAO's error cannot impart an expectation sufficient to create a property interest. As the Defendants correctly point out, GAO is granted its authority by Congress and is subject to any limitations Congress may impose. *Chrysler Corp. v. Brown,* 441 U.S. 281, 302, 99 · S.Ct. 1705, 1718, 60 L.Ed.2d 208 (1979) ("The legislative power of the United States is vested in the Congress, and the exercise of quasi-legislative authority by governmental departments · and agencies must be rooted in a grant of such power by the Congress and subject to limitations which that body imposes."). Here, that limitation was a two or three-year limitation period for FLSA claims. The Court concludes, therefore, that Plaintiffs who are not included under the amended Section 640 (because their claims were filed after June 30, 1994) have no property interest in back pay claims or unpaid overtime compensation.

■ The remaining Plaintiffs are a different matter. When Congress extended the statute of limitations for FLSA claims to six years by passage of the original Section 640 of the 1995 Act, Plaintiffs suddenly acquired property interests in their unpaid overtime compensation. Although amended Section 640 excludes many of those who otherwise would have fallen within the original Section 640, the Court does not find that these Plaintiffs automatically lose their property interests. The Court disagrees with the reasoning in *Jones* and *Austin* that Congress may extinguish an otherwise vested property interest concerning agency action merely by

passing new legislation. This distinction, however, is academic in light of Congress's authority to deny Plaintiffs their property under a different standard.

## C. *Economic Legislation and Due Process*

■ The Supreme Court has held that retroactive economic legislation is permissible even if it interferes with legitimate expectations as long as it meets due process guarantees. *Pension Benefit Guaranty Corporation v. R:A. Gray and Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984). In order for due process to be satisfied, economic legislation, applied retroactively, must have "a legitimate legislative purpose furthered by rational means." *General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 1112, 117 L.Ed.2d 328 (1992). In fact, such legislation is given a presumption of constitutionality and the burden rests on the party challenging the statute ·to show that it was "arbitrary and irrational." *Usery v. Turner Elkhorn,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976).

There is no question that the legislation involved is economic in nature. Amended Section 640 involves the limitations period for money claims made under FLSA. *See Austin v. City of Bisbee,* 855 F.2d at 1435 ("The FLSA is one of myriad 'legislative Acts adjusting the burdens and benefits of economic life.'" (internal citations omitted)). Further, by its express language, amended Section 640 is retroactive because it applies to individuals who filed their claims prior to June 30, 1994. Moreover, the statute takes away property rights conferred by the original Section 640 by excluding individuals if they have received overtime compensation under different provisions or if their claims involve overtime for commuting.

■ The question then becomes whether the purpose of the act was legitimate. In determining the legislative purpose, the Court looks both to the legislative history and the language of the statute for guidance.

The legislative record for amended Section 640 is sparse. In fact, there appears to have

been little debate on the matter when it came up for a vote on the floor of the House of Representatives on November 15, 1995. What little debate there was took the form of a statement made by Representative Lightfoot in which he indicated that the bill had bipartisan support. 141 Cong.Rec. H12371–02, H12376 (Nov. 15, 1995). Rep. Lightfoot urged passage of the bill on the basis that the government would otherwise be required to pay out an unanticipatedly large sum of money and that government workers should be given the same rights as their private sector counterparts. *Id.* Rep. Lightfoot concluded by stating: "We agreed, not just because it costs a lot of money, but because it is fair." *Id.*

Were the purpose of this statute merely about saving money, the Court would find the legitimacy element to be a more difficult question. As the record shows, however, avoiding a large expenditure is only one of the several stated purposes behind Amended Section 640. More telling is the legislature's stated intention to put federal workers in the same position as private sector workers—a position consistent with the 1974 legislation which made FLSA applicable to federal workers.

Complicating this analysis, however, is the final language of Amended Section 640, which provides:

> This section shall not apply to any claim where the employee has received any compensation for overtime hours worked during the period covered by the claim under any other provision of law, including, but not limited to, 5 U.S.C. 5545(c), or to any claim for compensation for time spent commuting between the employee's residence and duty station.

109 Stat. 468–69. If the intention was to equate the rights of federal workers with the private sector, then why did Congress leave the six-year limitation period relatively intact for some employees? Such language seemingly creates a contradiction between one of the purposes for the legislation, and the final language of Amended Section 640.

The Court, however, is only slightly concerned about such a discrepancy. Perhaps Congress, wanting to be "fair" to many who had already filed their claims, let stand the six-year limitation period for those whose claims had been filed prior to June 30, 1994. After all, future claims would be given only the two or three-year limitation period in the Portal-to-Portal Act, which is consistent with the rights afforded to the private sector. What Congress changed in the Amended Section 640 was who (of those who filed prior to June 30, 1994) could take advantage of the extended limitation period. While deciding to allow the six-year limitation period to remain temporarily, Congress apparently decided to limit such claims to those workers who had not received overtime compensation for the same period under another provision of law and to exclude any claims involving time spent commuting. There is nothing improper about this. In fact, with regard to the first limitation, it is difficult to imagine any purpose more legitimate than preventing workers from receiving double overtime compensation.

As for the limitation concerning commuting, this is a closer question, especially because there is nothing specific in the legislative history that might offer guidance. Nonetheless, consistent with the reasoning thus far, the Court finds the purpose of this provision to be legitimate. As already noted, Rep. Lightfoot gave as reasons for passage of the amendment "cost" and "fairness". But Rep. Lightfoot also spoke of equating the rights enjoyed by federal employees to those of private sector employees. Under 29 U.S.C. § 254(a) and (b) (1947), employers are not generally liable for overtime compensation for commuting absent a contract or custom. This provision has been extended to include federal workers, as well. *Carter v. Panama Canal Co.*, 463 F.2d 1289 (D.C.Cir. 1972), *cert. denied* 409 U.S. 1012, 93 S.Ct. 441, 34 L.Ed.2d 306. In any event, private sector employees are limited by the two or three-year statute of limitations for such actions, as would be the Plaintiffs here were it not for the original Section 640. 29 U.S.C. § 255 (1947). To the extent that Congress acted to equate federal workers' rights with those of the private sector concerning overtime claims for commuting, the Court finds amended Section 640 to have a legitimate

purpose. Further, the rational means was to enact amended Section 640.

Accordingly, the Court concludes that Congress, by enacting amended Section 640, had a legitimate purpose which was furthered by a rational means.

### D. *Taking without Compensation*

Plaintiffs also argue that their unpaid FLSA overtime was property that was taken without just compensation in violation of the Fifth Amendment of the Constitution. The Court disagrees.

The test for determining whether a compensable taking has occurred is set forth in *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 224–25, 106 S.Ct. 1018, 1026, 89 L.Ed.2d 166 (1986), in which the Supreme Court identified the following three factors: 1) the economic impact of the regulation on the claimant, 2) the extent to which the regulation has interfered with distinct investment-backed expectations, and 3) the character of the governmental action.

█ Concerning the first factor, the Court does not find that Plaintiffs will suffer a great economic impact. It is true that the total payout for Plaintiffs' claims would run into the millions of dollars and some of the claims go back as far as twelve years. This case, however, is not a class action. The "millions of dollars" figure does not, therefore, inure to the group as a whole. Rather, any impact must be measured against the individual claims. Plaintiffs have failed to show how any one of the Plaintiffs would suffer a greater economic impact than merely losing an entitlement that only in recent years had been discovered. Moreover, insofar as amended Section 640 prevents the Plaintiffs from receiving overtime compensation under FLSA when such compensation was paid under another provision of law, there can be little, if any, economic impact to the Plaintiffs.

█ Similarly, under the second prong, amended Section 640 does not unduly interfere with a distinct investment-backed expectation. Although the hours worked by the Plaintiffs are tantamount to an investment, there was no legitimate expectation to a six year limitation period. As recounted previously, the proper limitation period for FLSA claims is two or three years as stated by the Portal-to-Portal Act. 29 U.S.C. § 255(a) (1947). While Congress extended the limitation period for some individuals in some instances, it could also limit the application of this extension and did so. Plaintiffs' only legitimate expectation was to a two or three-year limitation period.

█ The final factor concerns the character of the action. The Court finds that this factor, for the most part, is subsumed by the above discussion concerning due process and the legitimacy of Congress's purpose in passing amended Section 640. As the Supreme Court stated in *Connolly*: "The purpose of forbidding uncompensated takings of private property for public use is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. at 227, 106 S.Ct. at 1027, *quoting Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). Congress apparently decided that it was unfair for the public to bear the burden of a mistake made by GAO. The legislative history of amended Section 640 expressly mentions fairness as a reason for the legislation. 141 Cong.Rec. H12371–02, H12376 (Nov. 15, 1995). Accordingly, the Court finds that the nature of the action taken by Congress is not inconsistent with the purpose behind the takings clause.

### E. *Equal Protection*

█ Plaintiffs also argue that they were denied equal protection of the laws guaranteed by the Fifth Amendment to the Constitution. Essentially, Plaintiffs allege that in the intervening time between the passage of the original Section 640 and the amended Section 640, several claimants had their claims favorably processed ("Kinsley claimants"), while Plaintiffs' claims were not acted upon during that same period.

The equal protection clause is meant to protect persons similarly situated from receiving disparate treatment under applicable laws. *City of Cleburne v. Cleburne Living*

*Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Where such disparate treatment does occur, there must be a rational basis. *Heller v. Doe,* 509 U.S. 312, 318, 113 S.Ct. 2637, 2641, 125 L.Ed.2d 257 (1993). Here, the Court does not reach the rational basis question because the Court concludes that Plaintiffs and the Kinsley claimants were not similarly situated.

Although the Kinsley claimants and the Plaintiffs each had claims that were received by GAO during the interim period between passage of the original section 640 and the amended Section 640, they arrived in very different stages of development. The Kinsley claimants had received rulings on their claims by the Office of Personnel Management (OPM) in 1993, which included a fully developed record of factual findings. *Kinsley,* No. B–235609.2, 1995 WL 9720, 2 (Comp. Gen. Jan. 9, 1995). Plaintiffs, however, had not received administrative rulings on their claims when they first approached GAO following enactment of the original Section 640 and there does not appear to have been a factual record upon which GAO could even have reviewed the claims. While the Plaintiffs, as directed, brought their claims to the employing agencies, the claims for the Kinsley claimants were resolved pursuant to the newly enacted original Section 640 in January 1995. *Id.* By the time Plaintiffs received decisions from the individual agencies (March 10 through May 12, 1995), however, the Treasury Department was already lobbying Congress to repeal original Section 640. (Bernstein Decl., Exs. 11, 12).

Whether such activity is a proper reason to delay resolution of pending claims is a difficult question, but one the Court does not have to answer. Rather, the Court is satisfied that Plaintiffs did not have a sufficiently developed factual record for their claims and, given the sheer number of Plaintiffs in this case, would not have had one by the time amended Section 640 was enacted in November 1995.[4] The Court, therefore, concludes that Plaintiffs were not denied equal protec-

tion of the laws because they were not similarly situated with those whom Plaintiffs complain were given preferential treatment.

### F. *Administrative Procedures Act ("APA")*

In light of the Court's conclusions thus far, Plaintiffs' remaining claims are moot. Plaintiffs allege that the GAO and the employing agencies violated the APA by following the *Ford* decision and again when the GAO failed to resolve Plaintiffs' claims in the interim period between passage of original Section 640 and amended Section 640. Plaintiffs request that the Court declare the *Ford* decision invalid and order the GAO to apply a six-year statute of limitations to all of their claims.

Plaintiffs' claims in this regard depend upon the argued invalidity of amended Section 640. The Court has determined that amended Section 640 passes constitutional muster. Moreover, insofar as Congress impliedly adopted the two or three-year limitation period (and which this Court finds otherwise to be applicable) for all claims that do not fall under amended Section 640, the *Ford* and the *Atkinson* decisions are valid. Finally, the Court cannot in this case "compel agency action unlawfully withheld or unreasonably delayed" under the APA, 5 U.S.C. § 706(1), because the delay complained of has been mooted by enactment of amended Section 640.[5]

### III. *CONCLUSION*

For the reasons stated above, the Court concludes that Congress did not act unconstitutionally by enacting amended Section 640, nor did the GAO violate equal protection guarantees in processing other claims. Finally, in light of these conclusions, Plaintiffs' remaining claims pursuant to the APA are moot. Judgment, therefore, is entered for the Defendants.

---

**4.** Defendants argue that because of the number of claimants and the enormity of the task of determining their substantive eligibility for backpay, any final decision was months, if not years, away. Def.Mot.Sum.J. at 46.

**5.** Of course, the Court expects that those Plaintiffs who meet the criteria of amended Section 640 will have their claims resolved in a timely fashion.