**Eunice L. ROSS, Plaintiff,**

v.

**Paul ZAVARELLA, Robert N.C. Nix, John P. Flaherty, Nicholas P. Papadakos, Stephen A. Zapala, James Thomas McDermott, etc., Defendants.**

**Civ. A. No. 89–CV–1004.**

United States District Court, M.D. Pennsylvania.

March 20, 1990.

Timothy G. Hagan, Donnelly, Huizenga, Wahl, Hagan & Hergt, Detroit, Mich., and Peter Suwak, Washington, Pa., for plaintiff.

Howland Abramson, Philadelphia, Pa., for defendant Zavarella.

Arlin Adams, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants Nix, Flaherty, McDermott, Zapala and Papadakos.

**OPINION**

RODRIGUEZ, District Judge.

## I. STATEMENT OF FACTS

On July 10, 1989 plaintiff Eunice L. Ross filed suit in the United States District Court, Middle District of Pennsylvania, against the Honorable Paul Zavarella, the President Judge of the Court of Common Pleas of Allegheny County, and the Justices [1] of the Pennsylvania Supreme Court individually and in their official capacities for violation of her rights under 42 U.S.C. § 1983.

Plaintiff the Honorable Eunice L. Ross has been a judge in the Court of Common Pleas of Allegheny County since she received her commission in December of 1972. After service in the Family and Civil Divisions of the Court of Common Pleas of Allegheny County, Ross was assigned to the Orphan's Court Division in August of 1978, where she has served since that time. Defendant Paul Zavarella has been a Judge of the Court of Common Pleas of Allegheny County since January of 1974, and has been Administrative Judge of the Orphans' Court Division of Allegheny County. Zavarella has served as President Judge of the Court of Common Pleas of Allegheny County since January 19, 1989.

Defendant Robert N.C. Nix is Chief Justice, and defendants John P. Flaherty, Nicholas P. Papadakos, Stephen A. Zapala, and James Thomas McDermott are Justices of the Supreme Court of the Commonwealth of Pennsylvania, with plenary, supervisory and administrative power over the judicial system of Pennsylvania.

Plaintiff claims that her first amendment right to free speech was violated when she was transferred as a result of her participation in the Commonwealth of Pennsylvania Judicial Board of Inquiry and Review's ("the Board") investigation relating to Justice Larsen. The Board filed formal charges against Justice Larsen on May 24, 1988, some of which related to statements made by plaintiff to the Board. Plaintiff

---

**1.** Justice Larsen was not named as a defendant in this action because he did not participate in the decision to transfer Judge Ross.

subsequently testified on behalf of the Board, and adversely to Justice Larsen in August of 1988.

Plaintiff's claim is brought under 42 U.S.C. § 1983, and jurisdiction is pursuant to 28 U.S.C. § 1331, which gives federal district courts original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. Plaintiff also alleges that she has been harassed in retaliation for exercising her right to freedom of speech. She seeks compensatory and punitive damages, costs, interest, attorney fees, and injunctive relief.

Plaintiff contends that because of the friendship between defendant Zavarella and Justice Larsen, and as a result of the charges filed against Justice Larsen, defendant Zavarella's behavior towards her changed in that he "ceased returning [her] greetings and ceased talking to her when they met in the halls or lobby of the court building or in other settings, except when necessary for court business." First Amended Complaint, ¶ 18. Plaintiff states that the friendship between the two judges is evidenced by their joint membership in a social-political organization and Zavarella's testimony on behalf of Justice Larsen at the hearings of the Board. *Id.* Plaintiff also alleges that in furtherance of a campaign of harassment against her, defendant Zavarella, pursuant to his authority as the administrative and executive head of the court, petitioned the Supreme Court of the Commonwealth of Pennsylvania to transfer her from the Orphans' Court to the Civil Division.

Although defendant Zavarella justified the transfer as in the best interest of the court, plaintiff contends that the reasons are pretextual and that defendant's motives are actually retaliatory. Plaintiff also contends that the Pennsylvania Supreme Court acted in an "arbitrary and capricious" manner. In support of her claim, plaintiff explains that a Senior Judge was serving as a fourth judge on the Orphans' Court and that defendant Zavarella, in derogation of the past practice of accommodating the preferences of a commissioned judge over those of a senior judge in connection with assignments, transferred plaintiff to "get rid" of her. First Amended Complaint, ¶ 24. *See also* Affidavit of Merle Wylie, ¶ 7 at 2. Additionally, plaintiff cites to instances where defendant Zavarella interfered with her use of employees of the Clerk's Office as evidence of a pattern of harassment.

Plaintiff finally asserts that although she petitioned the Supreme Court of the Commonwealth of Pennsylvania for reconsideration of the transfer and a hearing, the process by which she was transferred did not provide standards upon which her petition should be considered, did not have procedures for the presentation of argument or evidence, and did not require that an opinion be issued specifying the grounds for the decision. First Amended Complaint, ¶ 29 at 7. Plaintiff claims that she is entitled to a permanent injunction staying her transfer to the Civil Division of the Court of Common Pleas.

Thus, plaintiff concludes that defendant Zavarella's petition for permanent transfer and the Pennsylvania Supreme Court's subsequent approval of the transfer violated 42 U.S.C. § 1983, and has caused her to suffer humiliation and great emotional harm. She contends she will suffer irreparable harm in the absence of appropriate injunctive relief.

On July 12, 1989, plaintiff filed a motion for a preliminary injunction and temporary restraining order enjoining her transfer from the Orphans' Court Division of the Court of Common Pleas of Allegheny County until such time as a hearing on the merits could be held.[2]

On July 19, 1989, two motions to dismiss the complaint were filed, one on behalf of defendant Zavarella and the other on be-

---

**2.** This court did not rule upon the motion for a preliminary injunction and a temporary restraining order because counsel to the Court Administrator of Pennsylvania stated that "there is no present plan to implement the challenged transfer of the plaintiff ... until this federal case is resolved." Letter from the Administrative Office of Pennsylvania Courts, July 12, 1989.

half of the Justices of the Supreme Court of the Commonwealth of Pennsylvania. While these motions to dismiss were pending before this court, plaintiff filed a motion to amend and supplement her first amended complaint, on March 6, 1990.

## II. DISCUSSION

### A. *Plaintiff's Motion to Amend the Complaint*

Initially, this court will address plaintiff's motion to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a). Plaintiff asserts that defendant Zavarella has taken retaliatory action against her subsequent to the filing of her original and first amended complaints. Her second amended complaint, however, contains no new allegations of improper conduct by the defendants who serve on the Pennsylvania Supreme Court.

Plaintiff now alleges that since the filing of this action, defendant Zavarella has refused to assign Orphans' Court cases to her and does not permit her to participate in motions and audits. Additionally, plaintiff contends that Judge Zavarella only allows her to sit on arguments that involve her own cases and has assigned a vacationing Orphans' Court judge's work to a criminal division judge, rather than permitting her to take on the excess work. She also asserts that two new judges were transferred to the civil division, thus obviating the backlog which served as defendant Zavarella's original justification for the transfer. Finally, Judge Ross suggests that she recently entered into a contract to co-author a book on will contests and consequently the prestige and marketing value of remaining an Orphans' Court judge has direct economic value to her.

■ Fed.R.Civ.P. 15(a) provides that "leave shall be freely given when justice so requires." Whether to allow an amendment remains within the sound discretion of the district court. *Snyder v. Baumecker*, 708 F.Supp. 1451, 1456 (D.N.J.1989). The court may deny leave to amend on the basis of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party and futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Leave to amend should be granted " 'if the plaintiff has at least colorable grounds for relief.' " *Index Fund, Inc. v. Hagopian*, 609 F.Supp. 499, 503 (S.D.N.Y. 1985) (quoting *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979)).

After examining the record and reviewing the submissions of the parties, this court finds that there is no evidence that plaintiff seeks leave to amend in bad faith or out of some dilatory motive. Moreover, no substantial prejudice to defendants would occur as a result of the proposed amendment.

■ "The trial court may, [however,] properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). *See also Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984), *cert. denied*, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). Consequently, it is incumbent upon this court to consider the merits of a proposed amendment before determining whether to grant leave to amend. *Snyder*, 708 F.Supp. 1451, 1457 (citing *Kiser v. General Electric Corp.*, 831 F.2d 423, 427 (3d Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1078, 99 L.Ed.2d 238 (1988).

Defendants contend that the complaint should be dismissed on the grounds that venue in the Middle District of Pennsylvania is improper, that the complaint fails to state a claim upon which relief can be granted, and that absolute immunity precludes liability on the part of defendants. The Supreme Court asserts that the eleventh amendment bars suit against the Supreme Court of Pennsylvania. Judge Zavarella also maintains that plaintiff's complaint fails to state a claim upon which relief can be granted because Judge Ross has not been harmed and cannot claim diminution of her salary, benefits, authority, or

tenure, and that there is no federal cause of action for the tort of infliction of humiliation and emotional distress.

Additionally, defendants assert that under the guise of a section 1983 suit, plaintiff seeks to overturn a judgment of the Pennsylvania Supreme Court. Defendants claim that the transfer order and the order denying plaintiff's request for reconsideration of the transfer were adjudicative in nature and, as such, this court lacks jurisdiction to hear her claims. To do so, defendants suggest, would be tantamount to reviewing a final judgment by the highest court of a state; a review which can only be undertaken by the United States Supreme Court pursuant to 28 U.S.C. § 1257. Defendants cite the *Rooker–Feldman* [3] doctrine in support of their argument. This doctrine precludes review of a judgment or decree entered by the highest court of a state through any avenue other than 28 U.S.C. § 1257.

Plaintiff Ross opposes defendants' motions to dismiss by claiming that the *Rooker–Feldman* doctrine does not apply because the defendants' actions are administrative or ministerial as opposed to adjudicative and, as such, can properly be challenged "by a Section 1983 action in this forum." Plaintiff further contends that venue is proper in the Middle District of Pennsylvania, that judicial immunity does not apply, that claims are stated against all defendants, and that plaintiff has alleged an injury for which relief is available.

**B.** *The Supreme Court of Pennsylvania's Motion to Dismiss*

■ When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the reviewing court must accept all well pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

A court may not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The threshold issue before this court is whether a federal district court has jurisdiction to hear plaintiff's claims. To make such a determination, one must first examine whether the Pennsylvania Supreme Court's order transferring plaintiff Judge Ross is adjudicative or administrative in nature. If it is adjudicative and plaintiff merely seeks review of her transfer, then this court lacks subject matter jurisdiction over this action under 28 U.S.C. § 1257 and the *Rooker–Feldman* doctrine. On the other hand, if the transfer is administrative, then a section 1983 suit may lie, and this court has jurisdiction. If, however, the transfer order is adjudicative in nature and the issue is whether the process by which the Pennsylvania Supreme Court transfers judges is constitutional, then this court has jurisdiction to grant relief.

Although it is true that the district court's jurisdictional grant includes authority over civil actions arising under the Constitution, "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed [only] by the [United States] Supreme Court by writ of certiorari." 28 U.S.C. § 1257. The Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), examined the scope of section 1257 of title 28 of the United States Code.

In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, the Supreme Court addressed the question of whether a federal district court had jurisdiction to hear a challenge to an Indiana Supreme Court de-

---

**3.** The *Rooker–Feldman* doctrine takes its name from two major Supreme Court cases interpreting 28 U.S.C. § 1257, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

cision. The petitioner alleged that the Indiana Supreme Court's ruling violated the Constitution and the "law of the case." *Id.* at 414–15, 44 S.Ct. at 149–50. The *Rooker* Court held that the district court could not reach the merits of the case because, "[u]nder the legislation of Congress, no court of the United States other than [the Supreme] Court could entertain a proceeding to reverse or modify the [judgment of a state supreme court].... To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." 263 U.S. at 416, 44 S.Ct. at 150 (citations omitted).

In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court discussed the distinction between judicial and administrative or ministerial proceedings. *Feldman* involved a federal suit by two lawyers challenging the refusal of the District of Columbia Court of Appeals[4] to admit them to the bar. The significance of such a distinction is that an order emanating from a judicial proceeding of a state supreme court is not reviewable by a federal district court, but an administrative or ministerial order may be reviewable if a valid constitutional claim exists. In its discussion, the *Feldman* Court relied upon *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908), for guidance in determining the nature of a proceeding.

The issue before the *Prentis* Court was whether a federal district court was free to enjoin the implementation of a rate order imposed by the District of Columbia Court of Appeals.[5] The *Prentis* Court stated that "[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed to exist. That is its purpose and end." *Id.* at 226, 29 S.Ct. at 69. The Court found that the commission's determination of a rate was legislative as opposed to

adjudicative because the decision looked to the future and changed existing conditions by making a new rule to be applied thereafter. *Id.* The Court suggested that the nature of the proceeding "depends not upon the character of the body but upon the character of the proceedings.... The nature of the final act determines the nature of the previous inquiry." *Id.* at 226–27, 29 S.Ct. at 69–70 (citing *Ex parte Virginia,* 100 U.S. 339, 348, 25 L.Ed. 676 (1880)).

The *Feldman* Court also relied upon *In re Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945) in its determination regarding the existence of a case or controversy. In *Summers,* the petitioner sought review of the Supreme Court of Illinois's denial of petitioner's prayer for admission to the practice of law in that state. The Court noted that even though the law of Illinois treated the action by its supreme court as ministerial, such as the appointment of a clerk or a bailiff, the determination should turn on an appraisal of the circumstances of the state supreme court's refusal to admit petitioner to the bar. *Id.* at 565–66, 65 S.Ct. at 1310–11. The *Summers* court, in conducting its appraisal, stated:

> A case arises, within the meaning of the Constitution, when any question respecting the Constitution, treaties or laws of the United States has assumed 'such a form that the judicial power is capable of acting on it.' ... A declaration on rights as they stand must be sought, not on rights which may arise in the future, *and there must be an actual controversy over an issue, not a desire for an abstract declaration of the law. The form of the proceeding is not significant. It is the nature and effect which is controlling.*

*Id.* at 566–67, 65 S.Ct. at 1311 (citations omitted) (emphasis added). Applying that standard, the Court noted that the Illinois Supreme Court considered the petitioner's

---

**4.** For purposes of federal jurisdiction, the District of Columbia Court of Appeals is treated as the highest court of a state. *See* 28 U.S.C. § 1257(b).

**5.** Although the *Prentis* Court addressed the distinction between acts in a legislative, rather than a judicial framework, the difference is nonetheless helpful in distinguishing a judicial action from an administrative or ministerial action.

application on the merits, and although "no entry was placed by the Clerk in the file, on a docket, or in a judgment roll ... [the state court nonetheless took] cognizance of the petition and passed an order which [was] validated by the signature of the presiding officer." *Id.* at 567, 65 S.Ct. at 1311. The Court stated that "the consideration of the petition by the [state] Supreme Court, the body which has authority ... to give the relief sought, makes the proceeding adversary in the sense of a true case or controversy." *Id.* at 567–68, 65 S.Ct. at 1312.

In light of *Prentis* and *Summers,* the *Feldman* Court held that the proceeding surrounding the denial of Feldman's petition was judicial, and not legislative, ministerial, or administrative in nature because the proceeding "involved a 'judicial inquiry' in which the court was called upon to investigate, declare, and enforce 'liabilities as they [stood] on the present or past facts and under laws supposed already to exist.'" *Feldman,* 460 U.S. at 479, 103 S.Ct. at 1313 (quoting *Prentis,* 211 U.S. at 226, 29 S.Ct. at 69). The *Feldman* Court affirmed the district court's finding that it was without jurisdiction to review the final order denying the petitioner's application for admission to the state bar, even though the "challenge [was] anchored to alleged deprivation of federally protected due process and equal protection rights." *Feldman,* 460 U.S. at 485, 103 S.Ct. at 1316.

The *Feldman* Court, however, determined that the issue of whether the state's general rules and regulations governing admission to the bar were constitutional was within the jurisdiction of the district court. *Id.* at 485, 103 S.Ct. at 1316. The court concluded:

> United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings *even if those challenges allege that the state court's action was unconstitutional.* Review of those decisions may be had only in this Court. 28 U.S.C. § 1257.

*Id.* at 486, 103 S.Ct. at 1317 (emphasis added).

Recently, the Supreme Court reaffirmed the *Rooker–Feldman* doctrine in *Asarco Inc. v. Kadish,* —— U.S. ——, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). The *Asarco* Court determined that review by the district court of the Arizona Supreme Court ruling where "[t]hat action, in essence, would be an attempt to obtain direct review of [of a state supreme court's] decision in the lower federal courts ... would represent a partial inroad on *Rooker–Feldman's* construction of 28 U.S.C. § 1257." *Id.* 109 S.Ct. at 2048.

In *Stern v. Nix,* 840 F.2d 208, 212 (3d Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 77, 102 L.Ed.2d 53 (1988), the plaintiff brought an action in the federal district court challenging the constitutionality of an order of the Pennsylvania Supreme Court disbarring him from the practice of law. The district court refused to dismiss the case under the *Rooker–Feldman* doctrine. 840 F.2d at 211. On appeal, the Third Circuit vacated the district court's ruling with instructions to dismiss the complaint for lack of jurisdiction. The appeals court held that there could be no jurisdiction, because "[i]f it granted Stern's requests, the federal court would effectively reverse the state court judgment, and thus 'review [a] final judgment[ ] of a state court in judicial proceedings,' contrary to *Rooker–Feldman.*" 840 F.2d at 212.

Additionally, the Third Circuit recently applied the *Rooker–Feldman* doctrine in *Centifanti v. Nix,* 865 F.2d 1422 (3d Cir. 1989). In *Centifanti,* the appellant challenged the constitutionality of the Pennsylvania rules, rather than the state court's application of them to deny his petition. *Id.* at 1429. The Third Circuit Court of Appeals examined the underlying complaint and determined that

> [Centifanti did] not request the district court to interfere in any way with the decision of the Pennsylvania Supreme

Court to deny his petition, or with the enforcement of that decision. Instead, he request[ed] an injunction ordering the state court to correct alleged constitutional defects in the procedural rules applied in reaching that decision. Although such relief, if granted, could affect *future* decisions of the state supreme court, it would not require review of a past decision. Thus, ... the district court ha[d] subject matter jurisdiction over the due process claim.

*Id.* at 1430.

▉ Plaintiff Ross asserts that the *Rooker–Feldman* Doctrine does not apply to her case. She maintains that the instant case is distinguishable from cases that directly challenge a state court litigation or proceeding related to the admission or disbarment of attorneys because her claim concerns judges acting in their administrative or executive capacities as employers rather than in their adjudicative capacity. Plaintiff asserts that attorney admission cases involve an adjudication of an individual's fitness to be an attorney, whereas in her case no formal steps were taken and no determination was made regarding her fitness to be a judge. Plaintiff contends that transfers due to the alleged staffing requirements of the court are "in no way proceedings." This court disagrees. Although plaintiff correctly states that the *Rooker–Feldman* doctrine only bars district court review of state supreme court orders that are adjudicative in nature, she mischaracterizes the Pennsylvania Supreme Court order as administrative.

On January 21, 1989, defendant Zavarella petitioned the Supreme Court of Pennsylvania to approve the permanent transfer of plaintiff Ross to the Civil Division of the Court of Common Pleas of Allegheny County. Initially, plaintiff did not submit opposition to her transfer. On March 9, 1989, the Supreme Court of Pennsylvania granted the petition. Ross then requested a rehearing, asserting that the transfer was in retaliation for her testimony before the Judicial Board of Inquiry and Review.

On March 22, 1989, she filed a petition for reconsideration, permanent stay and vacation of order. Zavarella responded to the petition on March 31, 1989, and Ross replied to Zavarella's response on April 7, 1989. On June 29, 1989, Ross petitioned the Supreme Court of Pennsylvania for a ruling on the petition for reconsideration, stay and vacation of the transfer order and on the request for hearing. She also requested a temporary stay until such a ruling could be made. On July 12, 1989, the Pennsylvania Supreme Court entered a *per curiam* order denying Ross's petition for reconsideration, permanent stay and vacation of order. Her petition for a ruling was dismissed on July 17, 1989.[6] Justice Larsen did not participate in the consideration or decision of the court.

Even though no formal record was made of the proceedings, the state supreme court considered the petition on the merits and issued an order. Just as in *Summers*, the Pennsylvania Supreme Court "[took] cognizance of the petition and passed an order which [was] validated by the signature of the presiding officer" when it ordered Plaintiff Ross transferred. *Summers*, 325 U.S. at 567, 65 S.Ct. at 1311. The Pennsylvania Supreme Court's order "involved a 'judicial inquiry' in which the court was called upon to investigate, declare, and enforce liabilities as they [stood] on the present or past facts and under laws supposed already to exist." *Feldman*, 460 U.S. at 479, 103 S.Ct. at 1313 (quoting *Prentis*, 211 U.S. at 226, 29 S.Ct. at 69). Where "the court takes cognizance of the complaint without requiring ... appearance[s], ... the consideration of the petition by the Supreme Court, the body which has authority itself by its own act to give the relief sought, makes a proceeding adversary in the sense of a true case or controversy." *Summers*, 325 U.S. at 567–69, 65 S.Ct. at 1311–12.

Plaintiff's transfer is distinguishable from the dismissal of a secretary or clerk. Here, plaintiff contends that she was denied a constitutional right. The Pennsylva-

---

**6.** *Per curiam* means "by the court" and is "[a] phrase used to distinguish an opinion of the whole from an opinion by any one judge." Black's Law Dictionary 1023 (5th ed.1979).

nia Supreme Court considered the controversy related to plaintiff's transfer and determined that the transfer was appropriate. The supreme court's action was based on its examination of a true case or controversy between the parties and therefore, the court's order is not subject to review by this court.

An examination of the specific relief sought fortifies this court's determination that it lacks subject matter jurisdiction. *See Centifanti v. Nix,* 865 F.2d 1422, 1429 (3d Cir.1989) (citing *Stern,* 840 F.2d at 212).

Plaintiff seeks damages and injunctive relief. Although plaintiff claims that the process by which she was transferred "did not provide any rules governing procedures or hearings for presentation of argument or evidence," and "no standards exist upon which this petition was to be considered," the relief sought includes damages and an order restraining her transfer. Plaintiff emphasized during oral argument that she was seeking injunctive, not declaratory relief. Injunctive relief would in effect reverse the state court order.

Plaintiff "may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits." *Hale v. Harney,* 786 F.2d 688, 691 (5th Cir.1986). " '[L]ower federal courts possess no power whatever to sit in direct review of state court decisions.' " *Feldman,* 460 U.S. at 482 n. 16, 103 S.Ct. at 1315 n. 16 (quoting *Atlantic Coast Line Railroad Co. v. Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970)). Therefore, this court will grant the Supreme Court of Pennsylvania's motion to dismiss.

### C. *Judge Zaveralla's Motion to Dismiss*

■ An examination of plaintiff's petition for reconsideration filed in an effort to stop her transfer and her reply to Judge Zavarella's response to the petition demonstrates that the claims of harassment and reprisal contained in the original complaint were brought to the attention of the Pennsylvania Supreme Court. The Supreme

Court's decision denying the petition constitutes an adjudication of those claims. Plaintiff's claims contained in her first amended complaint are inextricably intertwined with the merits of the Pennsylvania Supreme Court's denial of her petition.

In paragraphs 36–40 of plaintiff's second amended complaint, Judge Ross maintains that Judge Zavarella continues to harass her for her testimony against Justice Larsen. Because defendant Zaveralla has not yet had an opportunity to respond to the additional allegations contained in the second amended complaint, this court will not render any judgment with respect to them. Therefore, this court will grant Judge Zaveralla's motion to dismiss with respect to the first amended complaint. Plaintiff's allegations of defendant Zaveralla's improper conduct after the filing of this action will be examined by this court at the appropriate time, after defendant has an opportunity to address them.

### CONCLUSION

The members of the court examined certain issues surrounding plaintiff's transfer, considered arguments by both Judge Zavarella and Judge Ross, and determined the rights of a particular party, Judge Ross. In making it's determination, the Pennsylvania Supreme Court had before it allegations that Zavarella acted in retaliation of Judge Ross's exercise of her first amendment rights. In denying Judge Ross's petition for reconsideration, the court considered her constitutional claims, and determined that her rights were not violated. As a result, the Pennsylvania Supreme Court's order transferring plaintiff was adjudicative.

The injunctive remedy sought would effectively overturn that order. Such a reversal would be an exercise of appellate jurisdiction and, therefore, outside the scope of this court's authority.

The United States District Courts are courts of limited jurisdiction, whose grant of authority is derived from statute. District Courts are granted original, not appellate, jurisdiction in most instances. 28 U.S.C. § 1331. Although some disputes ad-

mittedly raise interesting issues, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Federal Rules of Civil Procedure 12(h)(3).

The Pennsylvania Supreme Court order therefore is only subject to scrutiny by the United States Supreme Court, which has the sole authority to review orders of the highest state court. *Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

Judge Ross does not assert a claim reviewable by this court, therefore defendant Pennsylvania Supreme Court's motion to dismiss the complaint will be granted and Judge Zavarella's motion to dismiss the allegations contained in plaintiff's first amended complaint will be granted.

An appropriate order will be entered.