**Louis DAILY, Plaintiff,**

v.

**Madeline DAILY, et al., Defendants.**

**No. CIV. A. 99–CV–2059.**

United States District Court,
E.D. Pennsylvania.

April 26, 2000.

**464**

Louis G. Daily, Philadelphia, PA, pro se.

Gerald J. Schorr, Astor, Weiss, Kaplan & Rosenblum, Philadelphia, PA, for Madeline S. Daily.

Darren M. Breslin, Administrative Office of PA, Courts, Philadelphia, PA, for Justices of Court of Common Pleas, Paul

A. Panepinto, Justices of the Supreme Court.

### MEMORANDUM

ANITA B. BRODY, District Judge.

Now before me is defendants', "Justices of the Court of Common Pleas First Judicial District Family Court Division," the Honorable Paul P. Panepinto, and "Justices of Supreme Court of Pennsylvania," [1] motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] For the following reasons, I will grant the defendants' motion to dismiss.

### I. Background

As required in ruling on this motion, the following facts are taken from the plaintiff's amended complaint and presented in the light most favorable to the plaintiff.

Plaintiff, proceeding *pro se*, claims that he and his wife, Madeline Daily, entered into a Final Protective Order by consent without admission on January 6, 1997, pursuant to the Pennsylvania Protection from Abuse Act ("PFA" act), 23 Pa.C.S.A. § 6101, *et seq.* Plaintiff agreed to move out of the house he had previously shared with his wife and children (the "marital home") for a period of one year. The final protection order also provided for child support and visitation. Plaintiff thereafter filed for custody of his two children. The final protection order was expected to expire on January 7, 1998. Prior to January 7, 1998, plaintiff informed his wife, the Philadelphia Police Department and the District Attorney, among others, that he planned to move back into the marital home after January 7, 1998. Before January 7, 1998, plaintiff's wife filed for divorce, for exclusive possession of the marital

---

1. Although Madeline Daily, plaintiff's wife, was named as a defendant in plaintiff's complaint, plaintiff's amended complaint does not name Madeline Daily. Additionally, Madeline Daily is now deceased. The defendants' motion to dismiss notes that the record of plaintiff's divorce action, *Daily v. Daily*, Jan. Term 1998, No. 8406, (Phila.CCP), indicates that the divorce action was abated at the request

of Madeline Daily's attorney due to the death of his client. *See* Def. Resp. at 5 n. 6.

2. Because I will dismiss plaintiff's complaint pursuant to Rule 12(b)(1) (lack of subject matter jurisdiction), I will not address defendants' assertion that dismissal is appropriate under Rule 12(b)(6) (failure to state a claim).

home and for a second protection order. Plaintiff asserts that the divorce action is still unresolved.[3] Plaintiff's wife's second abuse petition was granted on January 13, 1998. Plaintiff claims that his wife was granted temporary exclusive possession of the marital home. Plaintiff's appeal from this final protection order was denied on January 13, 1998 and the Supreme Court of Pennsylvania denied plaintiff's petition for allowance of an appeal.

Plaintiff brings seven counts: First, plaintiff contends that "[t]he series of two Temporary Ex Parte Protection orders and two Final Protection Orders and an Exclusive Possession order in the divorce action violates [plaintiff's] right to raise his children by usurping the power of the custody court." Pl. Am. Comp. at 2. In count two plaintiff claims that "[r]estraining Orders ... are clearly supposed to be temporary as envisioned by the State Legislators but evicted persons rarely get back into their houses because of additional orders for exclusive possession ... [t]his is an abuse of due process." Id. In count three plaintiff asserts that "[a]n act which evicts people from their homes and children on the basis of accusation alone and on an ex-parte basis, even with a hearing ten days later, is contrary to the due process provisions of the U.S. Constitution (5th and 14th Amendment) and corresponding sections of the Pennsylvania Constitution." Id. Count four states in part that "it is an unconstitutional abridgement of due process and other rights to redefine a traditionally criminal offense as a civil matter because it thus deprives the accused of the rights afforded criminal defendants." Id. In count five plaintiff brings a claim pursuant to the equal protection clause of the Constitution, alleging that "[t]he Protection from Abuse Act violates the equal protection clause of the 14th Amendment to the U.S. Constitution and corresponding section of the Pennsyl-

vania Constitution." Id. Count six asserts that "assessment of fees of $1950 without a jury trial violates the seventh amendment to the U.S. Constitution and corresponding sections of the Pennsylvania Constitution." Id. Finally, in the last count, plaintiff contends that "[e]victing a person from his home on behalf of a complainant is an illegal seizure by the government prohibited by the fourth amendment to the U.S. Constitution and corresponding sections of the Pennsylvania Constitution." Id.

Plaintiff requests a declaratory judgement that: (1) eviction from a marital home pursuant to the PFA act cannot result in permanent exclusion from the marital home; (2) all protection orders pursuant to the PFA act must be proceeded by notice and a hearing; (3) all PFA hearings must be open to the public; (4) when a person is separated from his children as a result of a PFA order, the court will act diligently to see that such person has a continuing relationship with his children and opportunity to raise his children; (5) a person assessed fees or fines in excess of $50.00 pursuant to the PFA act must be granted a jury trial; (6) the PFA act must be administered in such a way so as to not result in the eviction of men in 90% or more of the cases; (7) defendants in PFA act cases must be afforded all the rights afforded criminal defendants; and (8) any other relief the Court deems appropriate.

## II. Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the court lacks subject matter jurisdiction. Dismissal is proper under Rule 12(b)(1) only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous." *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926

---

**3.** As noted above, however, defendants state that the divorce action is no longer pending because of the death of plaintiff's wife. Defendants' attach an October 21, 1999 letter written to Judge Cipriani, from Madeline Daily's attorney stating in part that "[i]t is with deep sadness that I report to you of the recent death of my client, Dr. Madeline Daily." Def. Resp. Ex. A.

F.2d 1406, 1409 (3rd Cir.1991) (internal quotations omitted). A Rule 12(b)(1) challenge may be either a factual or facial challenge to the complaint. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977). In the case of a factual challenge, the court is free to consider and weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case. *See id.* Therefore, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *See id.* The plaintiff has the burden of proving that jurisdiction exists. *See id.*

## III. Discussion

Defendants move to dismiss plaintiff's complaint for lack of subject matter jurisdiction based on the *Rooker–Feldman* doctrine.[4] Under the *Rooker–Feldman* doctrine a federal district court does not have subject matter jurisdiction over challenges to state court decisions. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). A federal claim is an impermissible challenge to a state court decision under the *Rooker–Feldman* doctrine when entertaining the federal claim would be equivalent to an appellate review of the state court order. *See FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3rd Cir.1996). The Third Circuit explained that "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" *Blake v. Papadakos,* 953 F.2d 68, 71 (3rd Cir.1992) (quoting *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303).[5] Additionally, the doctrine applies not only to claims that were actually adjudicated in state court, but also to claims that could have been raised in state court. *See Valenti v. Mitchell,* 962 F.2d 288, 296 (3rd Cir.1992) (stating that "[w]e reject ... [plaintiff's] argument that since they never raised, and the ... [state court] never considered, their ... [constitutional] challenges, *Rooker–Feldman* cannot bar them from pursuing these claims in federal court."). Consequently, any federal action in which the requested relief would reverse or nullify the ruling of a state court decision is barred under the *Rooker–Feldman* doctrine.[6] *See FOCUS,* 75 F.3d at 840. Therefore, defendants argue that plaintiff's claims are barred by this doctrine because a decision by this court

> [A]s a first step ... the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state court judgment. *Centifanti,* 865 F.2d at 1430 (quoting *Pennzoil Co.,* 481 U.S. at 25, 107 S.Ct. 1519 (Marshall, J., concurring)).

4. Defendants also contend that the plaintiff's case should be dismissed because there is no "case or controversy" as required by Art. III, § 2 of the United States Constitution. Defendants claim that they have no advocacy interest in the constitutionality of the Protection from Abuse Act and intervening events have removed the possibility of harm to the plaintiff in this matter. Because I will dismiss this case in whole based on the *Rooker–Feldman* doctrine, I will not address the merits of defendants' assertion that this case fails to present a justiciable "case or controversy."

5. In analyzing whether a federal claim is inextricably intertwined with a state court adjudication, the Third Circuit, in *Centifanti v. Nix,* 865 F.2d 1422 (3rd Cir.1989), quoting Justice Marshall's concurrence in *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), explained that:

6. The *Rooker–Feldman* doctrine also applies to final decisions of lower state courts. *See Port Authority Police Benevolent Assoc., Inc. v. Port Authority of New York and New Jersey Police Dept.,* 973 F.2d 169, 177–78 (3rd Cir. 1992).

would negate the state courts' determination that plaintiff's constitutional rights were not violated.

On February 19, 1998, the Family Court Division of the Court of Common Pleas for the County of Philadelphia ("Court of Common Pleas") issued a final protection order in *Daily v. Daily,* stating in part that "defendant, Louis G. Daily, shall refrain from abusing, harassing, and/or threatening the plaintiff Madeline G. Daily or placing her ... in fear of abuse in any place where she ... may be found."[7] Ex. A. Pl. Am. Comp. at 1 (*Daily v. Daily,* Jan. Term 1998, No. 8351, (Phila.CCP, Feb. 19, 1998) (Robinson, J.). The Court of Common Pleas also ordered that "defendant is enjoined and prohibited from living at, entering, attempting to enter or visit the residence [of Madeline G. Daily] ... and the plaintiff [Madeline G. Daily] is granted exclusive possession and control of the premises." *Id.* The order also provided for additional relief in that defendant (Louis Daily) was to pay counsel fees in the sum of $750.00 and $1,200.00 in lost wages to plaintiff (Madeline Daily). The Court of Common Pleas' February 19, 1998 order was to remain in full force and effect through February 18, 1999.

After plaintiff appealed the Final Protection Order, Judge Robinson issued an opinion further explaining the Final Protection Order and requesting that the court's order of February 19, 1998 be affirmed.[8] *See* Ex. B Pl. Am. Comp. (*Daily v. Daily,* Jan. Term 1998, No. 8351 (Phila.CCP). Judge Robinson addressed plaintiff's contention that the PFA act is unconstitutional in that it violates the Constitution of Pennsylvania and the Constitution of the United States. Judge Robinson found that plaintiff "fails to specify what provision of either Constitution violates

the [PFA] Act. The provisions of the [PFA] Act have been examined by the appellate courts on a number of occasions and been upheld." *Id.* at 5–6 (citing *Eichenlaub v. Eichenlaub,* 340 Pa.Super. 552, 490 A.2d 918 (1985) (lack of jury trial for criminal contempt upheld); *Commonwealth v. Zerphy,* 332 Pa.Super. 388, 481 A.2d 670 (1984) (double jeopardy); *Boyle v. Boyle,* 12 Pa.D. & C.3d 767 (1979) (due process)).

Plaintiff attaches to his motion the opinion of the Superior Court of Pennsylvania ("Superior Court") affirming the Court of Common Pleas' decision. The Superior Court also addressed plaintiff's constitutional arguments. First, the Superior Court rejected plaintiff's contention that the PFA proceedings are criminal in nature. While the Superior Court acknowledge that "[w]e have characterized PFA proceedings as 'quasi-criminal.' ... Nevertheless, we have rejected attempts to invoke the panoly of constitutional rights afforded criminal defendants." Ex. C Pl. Am. Comp at 7 (*Daily v. Daily,* No. 734 Phila.1998, at 7 (Pa.Super.1998)). The Superior Court stated that "[w]e have explained that the PFA act is 'not, nor was meant to be, a statute penalizing past criminal conduct. Rather, the primary goal of the act is not retrospective punishment but advance prevention of physical and sexual abuse.' " *Id.* (quoting *Snyder v. Snyder,* 427 Pa.Super. 494, 501, 629 A.2d 977, 981 (1993)).

Next, the Superior Court addressed the six separate constitutional arguments raised by plaintiff. First, the Superior Court rejected the plaintiff's attempt to invoke the Fourth Amendment because the plaintiff has not been subject to a search or seizure. *See id.* at 7–8. Second,

---

7. In the body of plaintiff's amended complaint he mentions protection from abuse orders entered on January 6, 1997 and January 13, 1998. The January 13, 1998 order was a temporary *ex parte* order which remained in effect until a full hearing. On February 19, 1998, after a full and complete hearing on the merits, a final protection order was entered.

*See* Ex. A Pl. Am. Comp. (*Daily v. Daily,* Jan. Term 1998, No. 8351 (Phila.CCP, Feb. 19, 1998) (Robinson, J.).

8. Judge Robinson's opinion, attached to plaintiff's amended complaint, does not appear to be dated.

468

the Superior Court held that plaintiff's claim that the PFA act violates his procedural due process guarantees is meritless because the Court has previously held that the procedures established by the PFA act satisfy the constitutional guarantees of due process. *See id.* at 8 (citing *R.G. v. T.D.,* 448 Pa.Super. 525, 529, 672 A.2d 341, 343 (1996)). Third, the Superior Court dismissed plaintiff's claim that his Sixth Amendment rights were violated stating that "assuming *arguendo* that indigent PFA defendants are entitled to appointed counsel, appellant has not argued or proven his indigence. Moreover, appellant was represented by paid counsel in the hearings below and never requested appointed counsel. Accordingly, we conclude that this claim was waived." *Id.* Fourth, the Superior Court held that plaintiff's claim, that he was entitled to a jury trial because of the amount in controversy, lacked merit. Plaintiff's contention that his right to a jury trial was denied was waived because he failed to timely demand a jury trial. *See id.* Fifth, the Superior Court rejected plaintiff's contention that the $1,950.00 award for Madeline Daily's lost wages and counsel fees was an unconstitutionally excessive fine. The $1,950.00 amount was not a fine, but rather a damage award between private parties and therefore, the constitutional proscriptions against excessive fines are inapplicable. *See id.* at 9 (citing *Browning–Ferris v. Kelco Disposal, Inc.,* 492 U.S. 257, 259–60, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); *Geffen v. Baltimore Markets,* 191 A. 24, 28, 325 Pa. 509 (1937)). Finally, the Superior Court rejected plaintiff's assertion that the PFA act is administered in a fashion that discriminates against the male gender, violating constitutional guarantees of equal protection. The Superior Court reasoned that "[t]he fact that women are more likely to seek PFA relief does not suggest that men are treated disparately when they seek

relief.... As appellant's offered evidence does not support a finding of discriminatory administration, his claim lacks merit." *Id.* at 10. On April 7, 1999, plaintiff's petition for allowance of an appeal to the Supreme Court of Pennsylvania was denied. *See* Ex. D Pl. Am. Comp. (*Daily v. Daily,* No. 633 E.D. Allocatur Docket 1998 (Pa.1999)).

The claims plaintiff raises in this lawsuit were all addressed in the state court actions, therefore, entertaining this federal claim would be equivalent to an appellate review of the state courts' decisions. In this lawsuit, plaintiff raises three counts based on a violation of his due process rights, one count alleging a deprivation of his equal protection rights, one count asserting a denial of his right to a jury trial pursuant to the Seventh Amendment and one count for violation of this Fourth Amendment right against illegal seizure.[9] As evidenced above, all of these allegations were directly addressed by the state courts. Furthermore, in plaintiff's response to defendants' motion to dismiss he "admits that his constitutional claims in the instant case are identical to those made in the state courts." Pl. Resp. at 3. Therefore, this court lacks subject matter jurisdiction and plaintiff's complaint will be dismissed.

In the absence of any supportable federal claims, I decline to exercise pendant jurisdiction over plaintiff's state law claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 728–29, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

For the reasons stated above, I will grant defendants' motion to dismiss.

### ORDER

**AND NOW,** this day __ of April, 2000, I **ORDER** defendants' motion to dismiss (docket entry # 17) is **GRANTED.** This

---

9. Plaintiff also brings a count for the violation of his "right to raise his children." Plaintiff, however, fails to articulate an alleged constitutional violation. Providing the necessary deference to a *pro se* plaintiff's complaint, I

will interpret plaintiff's argument as a due process claim. As evidenced above, however, the state court specifically rejected plaintiff's claim that the administration of the PFA act, in his case, violated his due process rights.

case is DISMISSED WITH PREJU-
DICE.