**COMMISSARIAT A L'ENERGIE ATOMIQUE, Plaintiff,**

v.

**SAMSUNG ELECTRONICS CO., LTD.; Sharp Corporation; AU Optronics Corporation; and Chi Mei Optoelectronics Corporation, Defendants.**

No. CIV.A. 03–484–KAJ.

United States District Court, D. Delaware.

April 18, 2006.

Richard D. Kirk, The Bayard Firm, Wilmington, DE, Gaspare J. Bono, Lora A. Brzezynski, Pro Hac Vice, for Plaintiff.

William J. Marsden, Jr., Sean Paul Hayes, Fish & Richardson, P.C., Richard L. Horwitz, Potter Anderson & Corroon, LLP, Neil P. Sirota, Pro Hac Vice, Josy W. Ingersoll, Karen Elizabeth Keller, Young, Conaway, Stargatt & Taylor, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE, for Defendants.

### REDACTED MEMORANDUM ORDER

JORDAN, District Judge.

## I. INTRODUCTION

This is a patent infringement case. The plaintiff is Commissariat a l'Energie Atomique ("CEA"), a French government agency. The defendants are Samsung Electronics Co., Ltd. ("Samsung"), a Korean corporation; Sharp Corporation ("Sharp"), a Japanese corporation; AU Optronics Corporation ("AU"), a Taiwanese corporation; and Chi Mei Optoelectronics Corporation ("CMO"), another Taiwanese corporation (collectively, the "Defendants"). This case is part of a larger complex of cases brought by CEA in this court seeking relief against more than fifty defendants for alleged infringement of CEA's rights under United States patents pertaining to liquid crystal display ("LCD") technology.[1] Presently before me is a request (D.I. 508, 523; the "Motion") by the Defendants for permission for their counsel to disclose to them certain information belonging to

CEA that has been provided under a protective order. For the reasons that follow, I am granting the Motion.

## II. GENERAL BACKGROUND

The parties to this action have been operating under a stipulated protective order (D.I. 215; D.I. 400; in combination, the "Protective Order"), pursuant to which each party may, among other things, designate as "Highly Confidential" information which it produces to other parties during discovery. (D.I. 215 at ¶ 2.2.) The effect of that designation is to limit access to the information to certain outside counsel for the parties, court personnel, retained experts, and court reporting and clerical service providers. (Id. at ¶¶ 2.2, 4.1, 4.2.) Because the parties are rivals in what appears, at least from the rigors of this litigation, to be an intensely competitive global market for LCDs, they are understandably sensitive about maintaining the secrecy of their proprietary information, hence the agreed upon restrictions on the disclosure of such information.

During discovery, CEA provided under the "Highly Confidential" designation certain information pertaining to licensing arrangements for its patented technology. Counsel for the Defendants wish to disclose to their clients a brief, seven-point summary (the "Summary") of what they view as key elements from that disclosure.[2] (See D.I. 508, 524.) While they do not contest that the underlying licensing docu-

---

1. On May 19, 2003, CEA filed a complaint alleging infringement of its U.S. Patent Nos. 4,701,028 ("the '028 patent") and 4,889,412 ("the '412 Patent"). (Docket Item "D.I." 1 at 2, 8.) The '028 Patent and the '412 Patent are both directed to technology involving the design and manufacture of LCDs and related products. (D.I. 1 at 2.) An LCD is a type of flat panel display that is used in products

such as computer monitors. (Id.) CEA has since filed amended complaints, but the patents-in-suit remain the same. (D.I. 371; D.I. 373; D.I. 379.) Related cases are pending in this court as civil actions 03–931–KAJ, 04–099–KAJ, and 04–231–KAJ.

2. The Summary is set forth in its entirety at n. 6, infra.

ments may contain confidential information, defense counsel do contest CEA's assertion that the Summary contains anything that can fairly be called confidential. (D.I. 536 at 9–10.) Moreover, they argue that they must be permitted to disclose the Summary to their clients in order to confer about the potential of adding a patent misuse defense to the case.[3] (D.I. 508 at 1; D.I. 524 at 1.) In short, they contend that any confidentiality designation CEA would apply to the information in question must yield to their professional obligations to advise and to represent their clients. Consequently, they seek an order overriding the Protective Order in this instance. CEA has responded by asserting that neither the Summary nor the information from which it is drawn provide any basis for a patent misuse defense. (D.I. 510; 528.)

Of necessity, I will be addressing the specifics of the Summary and certain portions of the underlying information. This Order will therefore be filed under seal, and the parties are directed to confer and report to the court within ten days their recommendation for redactions, so that a public version of the Order can be filed promptly.

## III.  STANDARD OF REVIEW

The management of discovery, including the granting and modification of protective orders under Federal Rule of Civil Procedure 26(c), is committed to the discretion of the district court. *See Centifanti v. Nix*, 865 F.2d 1422, 1424 (3d Cir.1989) ("district court did not abuse its discretion in denying ... motion to compel discovery and granting ... motion for a protective

order with regard to certain privileged documents").

## IV.  DISCUSSION

### A.  *Specific Background*
[REDACTED]

### B.  *Analysis*

It is important to bear in mind what the present dispute is not. It is not a motion for leave to amend an answer or a motion to dismiss a defense. It presents the question of whether it is appropriate to allow the Defendants' counsel to disclose a discrete set of information to their clients. Given the present context, the arguments for and against disclosure cannot help but address, to some degree, the merits of a patent misuse defense. After all, if one could disclose an adversary's confidential information simply by articulating a proposal for an additional defense, no matter how divorced from the facts or how fanciful the legal theory may be, then an obviously unhealthy incentive to multiply frivolous defenses would be injected into litigation. But the dispute at hand is not a basis for a full exploration of whether a patent misuse defense can properly be pleaded by the Defendants. That question, if it ever does arise, is for another day.

For now it is sufficient to observe that the proposed defense is not so divorced from the facts or law as to be frivolous on its face.

[REDACTED]

Whether that is a basis for a patent misuse defense is another matter. The parties again argue this point vigorously. CEA points out that the Patent Misuse

---

3.  The Defendants are at pains to point out that at least one of their number is also considering an antitrust counterclaim, although the ramifications of that for this dispute were not discussed in detail by either side. (D.I. 508 at n.1; D.I. 524 at n.1.) The discussion herein is couched in terms of the proposed misuse defense.

Reform Act of 1988 added clauses (4) and (5) to Section 271(d) of Title 35, thereby causing the statute to provide as follows:

No patent owner ... shall be ... deemed guilty of misuse or illegal extension of the patent right by reason of his having ... (4) refused to license or use any rights to the patent; or (5) conditioned the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned.

(*See* D.I. 528 at 14, citing 134 Cong. Rec. S14434–03 (daily ed. Oct. 4, 1988).) Certainly, one can contend from that language that pre-amendment cases about refusals to license are inapposite, except to the degree that they presaged the amendment by expressing skepticism of earlier case law.

■ CEA also points to Federal Circuit decisions following the 1988 Reform Act and asserts that they establish a two-part test to determine whether a patentee's actions amount to misuse, other than in cases that involve per se misuse or are specifically excluded from being misuse under Section 271(d). (D.I. 528 at 15–16.)

[A] court must determine if that practice is reasonably within the patent grant, *i.e.*, that it relates to subject matter within the scope of the patent claims. If so, the practice does not have the effect of broadening the scope of the patent claims and thus cannot constitute patent misuse. If, on the other hand, the practice has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect, that practice must then be analyzed in accordance with the "rule of reason."

*Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed.Cir.1997) (internal citations and quotation marks omitted). Under that "rule of reason" approach, "the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Id.* (internal citations and quotation marks omitted). According to CEA, their arrangements [Redacted] are not per se unlawful; the arrangements are within the safe harbor provisions of Section 271(d); and they pass the two-part Federal Circuit test since they "do not impermissibly broaden the physical or temporal scope of the patent grant with anticompetitive effect." (D.I. 528 at 17.)

The Defendants' counsel counter by arguing that pre–1988 case law remains binding, that the Section 271(d) safe harbor is inapplicable on the present facts, that it is not necessary to plead an anti-competitive effect akin to an antitrust violation in order make out a misuse defense, that they have nevertheless identified such an effect, and, shifting to another front, that CEA has failed to carry its burden of showing that the Summary actually contains information that can legitimately be deemed highly confidential. (D.I. 536 at 2–10.)

I have doubts about the Defendants' arguments for a patent misuse defense. Particularly in light of the Federal Circuit's recent consideration of misuse doctrine in *U.S. Philips Corp. v. International Trade Com'n*, 424 F.3d 1179 (Fed.Cir.2005) (holding that, under "rule of reason" analysis, package licensing agreements did not constitute patent misuse), it seems clear that the "key inquiry is whether, by impos-

ing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *Id.* at 1184 (quoting *C.R. Bard, Inc. v. M3 Sys., Inc..,* 157 F.3d 1340, 1372 (Fed.Cir.1998). That being the case, and assuming the facts are as Defendants' counsel claims, I am unsure how the Defendants will frame a misuse defense on the basis of CEA choosing to exercise its licensing power to favor one licensee, [REDACTED] In competitive effect, that actually seems less restrictive than an exclusive license. Nevertheless, I am reluctant to prejudge that issue or the question of whether the license [REDACTED] "impermissibly broaden[s] the scope of the patent grant ...." *Id.* There is some basis in older cases for the position advanced by the Defendants' counsel, and, at this point, I do not have the benefit of either seeing the proposed framing of the misuse defense or the parties' legal positions on the basis of that framing.

◼ In balancing CEA's demand for secrecy against the request by Defendants' counsel for leave to discuss the patent misuse defense with their clients, it is of particular significance that CEA has made only a weak showing in favor of having the Summary classified as "Highly Confidential." "[I]t is well-established that good cause must exist to obtain a protective order over discovery materials." *Shingara v. Skiles,* 420 F.3d 301, 306 (3d Cir. 2005). "[A]fter the court enters such an order there must be good cause to maintain the order in the face of a motion to vacate it ...." *Id.* CEA complains that to allow the revelation of any information about its license [REDACTED] would be "grossly unfair" because the Defendants have cloaked all of their licenses with confidentiality designations. (D.I. 528 at 30.) That, of course, entirely fails to address the point. The Defendants' counsel have

advanced a facially appropriate basis for revealing limited information about CEA's licensing arrangement [REDACTED] CEA has done nothing of the sort with respect to the Defendants' licenses. Moreover, it is CEA which chose to file complaints in a public forum, seeking the exercise of the government's powers to redress perceived wrongs. The defendants are hailed into court at CEA's insistence. Choosing to come to court does not, in itself, require the exposure of all one's confidential information, but one can expect that public litigation may entail some exposure of what might otherwise be kept private. *Cf. Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1122–23 (3d Cir.1986) (while commending use of umbrella protective orders in complex cases, cautioning that "[t]here may be cases in which the document-by-document approach ..., which deters over-designation of confidentiality and imposes heavier costs on parties making the confidentiality designation, will be preferable.").

◼ CEA makes light of the obligation that defense counsel have to consult with their clients before asserting a new defense (*see* D.I. 528 at 29–30); however, open communication between attorneys and their clients is a bedrock principle upon which the rules of professional conduct depend. *See, e.g.,* Preamble ("As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."); Rule 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); Rule 2.1 ("In representing a client, a lawyer shall exercise independent professional judgment and render candid

advice. In rendering advice, a lawyer may refer not only to law but to other considerations ....").[4] Counterpoised against that obligation is CEA's desire to keep secret the identity of its licensee and other information in the Summary about the licensing arrangement. Given the limited nature of the proposed disclosure and the reasons advanced for it, CEA's desire for secrecy, understandable though it may be, is insufficient to warrant continued protection from the disclosure requested.

CEA also argues that revealing the Summary would "have a chilling effect on settlement discussions, [REDACTED] (*Id.*) While no one is more eager than I to see the parties amicably resolve their differences, the notion that settlements made in the dark are better than litigation judgments made in the light has little appeal or persuasive effect.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Motion (as reflected in D.I. 508 and D.I. 523) is GRANTED, so that Defendants' counsel may disclose the Summary to their clients and consult with them regarding the potential legal positions which may be taken based on the information contained therein. It is further ORDERED that the parties shall confer and provide to the court within ten days of the date of this Order their recommendation for redactions necessary to create a version of the Order appropriate for public filing.

4. The standards for professional conduct governing attorneys appearing in this court are found in "the Model Rules of Professional Conduct of the American Bar Association, subject to such modifications as may be required or permitted by Federal statute, court rule or decision of law ...." Local Rule 83.6(d).